Eric L. Wesenberg, Bar No. 139696
EWesenberg@perkinscoie.com
Christopher L Kelley, Bar No. 166608
CKelley@perkinscoie.com
Kenneth J. Halpern, Bar No. 187663
KHalpern@perkinscoie.com
Wing H. Liang, Bar No. 285521
WLiang@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.43501

*Attorneys for Plaintiff*
THX LTD.

Mark D. Selwyn, Bar No. 244180
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

Nina S. Tallon (*pro hac vice*)
Nina.Tallon@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

*Attorneys for Defendant*
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THX LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 3:13-CV-01161-HSG <br><br> **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Plaintiff THX Ltd. ("THX") and Defendant Apple Inc. ("Apple") (collectively "the Parties") hereby stipulate as follows:

## 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.  The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

   a)  Only ESI created or received between March 14, 2007 and the present will be preserved;

   b)  The parties shall meet and confer to reach agreement on a reasonable list of custodians for purposes of collection, review, and production of electronically stored information. In connection with the meet and confer process, within 10 days of entry of this order, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the following subjects in this case:

- the asserted patents and U.S. Patent No. 9,107,003 (including conception, reduction to practice, diligence in reduction to practice, and prosecution);
- development, design, operation, use, marketing and sales of any non-Apple product alleged by THX to practice any claim of the asserted patents;
- the first public disclosure of the claimed inventions;
- the first disclosure by a named THX inventor of the claimed invention to any other person;
- the development, design, and operation of the loudspeakers in the accused products;
- sales and marketing of the accused products; and
- other damages-related information.

c) The parties agree that the following sources of data are not reasonably accessible, and the parties agree that they do not need to preserve them: backup media, digital voicemail, instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging, text messages, and automatically saved versions of documents. The parties agree that data from these sources could contain relevant information, but under the proportionality factors they should not be preserved.

d) Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

**5. SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**6. PRODUCTION FORMATS**

All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format. The parties agree to produce documents as

1   multiple page, searchable PDF format at a resolution of at least 300 dpi or in single page TIFF
2   format.  Each production shall include Concordance/Opticon image load files that indicate the
3   beginning and ending of each document.  For documents that already exist in PDF format prior to
4   production (i.e., which the producing party receives from a client or third party in PDF format),
5   the producing party may provide them in that same PDF format, whether searchable or non-
6   searchable.  For documents converted to PDF format prior to production, the producing party
7   shall make reasonable efforts to convert to searchable PDF.  The parties will meet and confer to
8   discuss requests for the production of files in native format, on a case-by-case basis. If the parties
9   are unable to reach agreement with regard to requests for additional documents in native-file
10  format, the parties reserve the right to seek relief from the Court.  Documents produced natively
11  shall be represented in the set of imaged documents by a slipsheet indicating the production
12  identification number and confidentiality designation for the native file that is being produced.  If
13  particular documents warrant a different format, the parties will cooperate to arrange for the
14  mutually acceptable production of such documents.  The parties agree not to degrade the
15  searchability of documents as part of the document production process.  The parties agree to
16  respond to reasonable and specific requests for the production of higher resolution or color
17  images.  Nothing in this Stipulation shall preclude a producing party from objecting to such
18  requests as unreasonable in number, timing or scope, provided that a producing party shall not
19  object if the document as originally produced is illegible or difficult to read.  The producing party
20  shall have the option of responding by producing a native-file version of the document.  If a
21  dispute arises with regard to requests for higher resolution or color images, the parties will meet
22  and confer in good faith to try to resolve it.
23       All documents shall be produced in their original language.  Where a requested document
24  exists in a foreign language and the producing party also has an English-language version of that
25  document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing
26  party shall produce both the original document and all English-language versions.  In addition, if
27  the producing party has a certified translation of a foreign-language document that is being
28  produced, (whether or not the translation is prepared for purposes of litigation) the producing

party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

## 7. DATABASES

Certain types of databases are dynamic in nature and, as such, information in those databases may change over time. If a party wishes to produce information from any such databases, that party shall identify the specific databases, by name and a description of those databases, that contain the relevant and responsive information to the other party prior to producing documents from any such databases. The party may opt to produce relevant and responsive information from databases in a static format, such as a report or data table. If the opposing party feels that the format used is inappropriate and/or that a supplemental static format production should be made, the parties shall meet and confer to attempt to agree on an appropriate format and/or the scope of supplemental static format production.

## 8. PRODUCTION MEDIA AND ENCRYPTION OF PRODUCTIONS

Unless otherwise agreed, the parties shall provide document productions in the following manner: The producing party shall provide the production data on CDs, DVDs, FTP, email, or external hard drives, as appropriate.

## 9. METADATA FIELDS

In collecting ESI for production, the parties shall preserve for production, and shall not remove or degrade, the metadata fields identified in this Section, to the extent such fields are contained in or associated with ESI unless modification is necessary to deal with path and name character length restrictions. However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original, if it is not possible to automate the creation of metadata when the document is collected. The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

For general ESI, parties shall preserve: Custodian, Author (to the extent it exists), Title (to the extent it exists), File Extension and Pages. Email productions shall preserve (to the extent it

exists): Custodian, Pages, From/Author, To, CC, BCC, Email Subject, Date Sent, Date Received, Time Sent, Time Received, and the BegAttach (the document ID number associated with the first page of the parent email) and EndAttach (the document ID associated with the last page of the last attachment to a parent email). All produced ESI shall indicate the Control Number Begin and End (also known as "Bates numbers").

**10. E-MAIL**

Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.

  a) General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email product requests. Non-email ESI, including, but not limited to, electronic files, shall be collected for each individual custodian from the personal computers, network resources, and other electronic devices that those individuals use for work purposes except for mobile phones.

  b) E-mail production requests shall identify specific custodians and time frame(s) to be searched.

  c) Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon a showing of good cause.

  d) Each requesting party shall limit its email production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon a showing of good cause.

  e) Search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive

combination of multiple words or phrases (e.g., "computer" and "system," "computer" w/x "system," "computer" but not "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search and thus each word or phrase shall count as a separate search term unless they are variations of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party request search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the producing party may decline to respond or request that the producing party bear all costs caused by such additional discovery.

  f) If a producing party determines, either upon receipt or thereafter, that one or more proposed search terms results or will likely result in an unduly burdensome quantity of excessive or irrelevant information ("false hits"), the producing party shall promptly contact the requesting party to request a reassessment of the proposed search term(s), and the parties shall meet and confer in good faith to discuss ways to limit the number of false hits, such as application of further negative search restrictions (e.g., if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents). The party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial search results.

  g) Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Such topics should be discussed pursuant to the District's E-Discovery Guidelines.

  h) The parties shall produce email attachments sequentially after the parent email.

**11. DOCUMENTS PROTECTED FROM DISCOVERY**

  a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere

1  production of privileged or work-product-protected documents in this case as part of a mass
2  production is not itself a waiver in this case or in any other federal or state proceeding.
3        b) In the event of inadvertent disclosure, the receiving party shall not use the content
4  of ESI that the producing party asserts is protected by any applicable privilege or doctrine, or the
5  fact of inadvertent production, to challenge the protection asserted.  Further, the receiving party
6  shall immediately return or confirm in writing that it has destroyed all information that contains
7  privileged matter or work product that appears on its face to have been inadvertently produced or,
8  if notice is provided, within fifteen (15) calendar days of the date of the notice.
9        c) Attorney-client communications or attorney work product that post-date the filing
10 of the complaint need not be placed on a privilege log.  Communications may be identified on a
11 privilege log by category, rather than individually, if appropriate.

**12. SOURCE CODE**

This Stipulation does not govern the format for production of source code.  The Parties understand and agree that source code will not be relevant to this litigation.  However, if the Parties' understanding and agreement later changes, they shall negotiate a separate "Source Code Protective Order" to be entered into at a later date.

**13. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED:  December 3, 2015      By: */s/ Eric L. Wesenberg*
    Eric L. Wesenberg, Bar No. 139696
    EWesenberg@perkinscoie.com
    Christopher L Kelley, Bar No. 166608
    CKelley@perkinscoie.com
    Kenneth J. Halpern, Bar No. 187663
    KHalpern@perkinscoie.com
    Wing H. Liang, Bar No. 285521
    WLiang@perkinscoie.com
    PERKINS COIE LLP
    3150 Porter Drive
    Palo Alto, CA 94304-1212

|   |   |
|---|---|
| 1 | Telephone:  650.838.4300 |
| 2 | Facsimile:  650.838.43501 |
| 3 | *Attorneys for Plaintiff* |
|   | *THX LTD.* |
| 4 |   |
| 5 | DATED:  December 3, 2015       By:  */s/ Nina S. Tallon* |

Mark D. Selwyn, Bar No. 244180
Mark.Selwyn@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

Nina S. Tallon (*pro hac vice*)
Nina.Tallon@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

*Attorneys for* Defendant
*APPLE INC.*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: 12/4/2015

*[signature: Haywood S. Gilliam, Jr.]*

UNITED STATES DISTRICT ~~MAGISTRATE~~ JUDGE