UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THX, LTD., <br>         Plaintiff, <br>    v. <br> APPLE, INC., <br>         Defendant. | Case No. 13-cv-01161-HSG (DMR) <br><br> **ORDER RE JOINT DISCOVERY LETTERS** <br> Re: Dkt. Nos. 82, 83 |

Before the court are two joint discovery letters filed by Plaintiff THX Ltd. and Defendant Apple Inc.

The first letter re-raises a dispute over whether THX's house counsel, Erik Riegler and Eunice Lee, are competitive decision-makers such that they should not be allowed access to Apple's protected financial and licensing material. [Docket No. 82.] The court held a hearing on February 4, 2016, and ordered THX to provide additional sufficiently detailed information about its licensing activities, as well as Riegler and Lee's responsibilities, to support its position that Riegler and Lee are not competitive decision-makers and should be given access to Apple's protected material. [Docket No. 69.] The court instructed the parties to meet and confer on the issue, and to file a further joint discovery if they could not resolve the matter without judicial intervention. *Id.*

In the second letter, Apple moves to compel THX to supplement its response to damages-related Interrogatory No. 6, and to supplement its initial disclosure on damages under Federal Rule of Civil Procedure 26(a)(1)(A). [Docket No. 83.]

The court has determined that both of these matters are suitable for determination without additional oral argument pursuant to Civil Local Rule 7-1(b). For the following reasons, the court finds that Riegler and Lee are competitive decision- makers and should not be allowed access to

Apple's protected licensing material, but should be granted access to Apple's confidential financial information to the extent reasonably necessary for case valuation and settlement discussions. The court grants Apple's motion to compel THX to provide further responses to Interrogatory No. 6 and to supplement its Rule 26(a)(1)(A) disclosure.

## I. BACKGROUND

In this patent infringement case, THX alleges infringement of U.S. Patent Nos. 7,433,483 ("the '483 patent") and 8,457,340 ("the '340 patent") (collectively, "the Patents-In-Suit"). First Amended Complaint ("FAC") [Docket No. 12]. The '483 and '340 patents are entitled "Narrow Profile Speaker Configurations and Systems." FAC ¶¶ 8, 12. The FAC alleges that Apple infringes the '483 and '340 patents by, among other things, making, using, importing, offering to sell, and/or selling in the United States products covered by one or more claims of the '483 and '340 patents in violation of 35 U.S.C. § 271, including but not limited to Apple's iPhone 4 and later models, as well as its iPad and iMac products. THX claims that these products incorporate narrow-profile speaker units that output sound through a duct or aperture having a narrow dimension. FAC ¶¶ 10, 14. Apple filed an Answer and Counterclaim denying infringement and asserting counterclaims for patent invalidity and non-infringement. [Docket No. 26.]

## II. WHETHER RIEGLER AND LEE ARE COMPETITIVE DECISION-MAKERS

The parties dispute who should have access to "Highly Confidential- Attorneys' Eyes Only" ("AEO") financial and licensing material. Both parties agree that competitive decision-makers should not have access to the other side's AEO material. *See* Proposed Protective Order [Docket No. 59-1] at 11; § 9(b)(i) (agreed language that receiving party's outside counsel may access AEO material, as long as they are not involved in competitive decision-making); THX's Proposal § 9(b)(iii) (access for up to two House Counsel, provided that they have no involvement in competitive decision-making).

THX proposes that up to two House Counsel be allowed to access AEO material if that material contains "financial and licensing information reasonably necessary for the Receiving Party to make decisions related to settlement and case valuation," and if those individuals have no

involvement in competitive decision-making. Docket No. 59-1, § 9(b)(iii). Apple opposes any such access, arguing that the risk to Apple of inadvertent disclosure is too great, and that THX has not demonstrated a need for the information.

As a practical matter, THX only has two House Counsel: Riegler and Lee comprise the entirety of THX's "in-house" legal team. Although Riegler is not a THX employee, he provides contractual services to THX as its "acting general counsel." Lee is an employee of THX and reports to Riegler. The parties thus agree that their dispute over the terms of the Proposed Protective Order turns on whether Riegler and Lee are competitive decision-makers such that providing them access to Apple's licensing or financial information would create too great a risk of inadvertent disclosure.

In resolving this dispute, the court is guided by *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465 (9th Cir. 1992). The Ninth Circuit held that in determining whether a party's in-house attorney should be permitted to view an opposing party's confidential information, courts must balance the risk to the party opposing disclosure of the inadvertent disclosure of its confidential information against the risk to the party seeking disclosure that protection of the confidential information would impair the prosecution of its claims. *Id.* at 1470.

The Federal Circuit has cautioned that when conducting this evaluation, a court should examine the factual circumstances of each counsel's relationship to the party demanding access to the information, rather than placing undue weight on counsel's status (i.e., in-house v. outside counsel). *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed. Cir. 1984). The "crucial factor" in this inquiry is whether counsel engages in "competitive decisionmaking." *Brown Bag,* 960 F.2d at 1470 (citing *U.S. Steel,* 730 F.2d at 1468 n. 3). This terminology is shorthand for "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel,* 730 F.2d at 1468 n. 3. An individual's participation in competitive decision-making is a critical factor in evaluating the risk of inadvertent disclosure, because it is difficult "for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may

3

be to do so." *In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373, 1378 (Fed. Cir. 2010). In other words, despite best efforts, individuals may not be able to set aside their knowledge of a competitor's confidential information when making key competitive decisions.

### A. Relationship Between THX and Apple

Before turning to the question of whether Riegler or Lee are competitive decision-makers, the court must first determine whether THX is engaged in business that might gain a competitive advantage from access to Apple's confidential information. If THX is not engaged in such activities, then the risk of inadvertent disclosure of Apple's confidential information by Riegler or Lee would be far less threatening to Apple's interests. However, even if THX is not a direct competitor of Apple, disclosure could still cause competitive risk to Apple. *See Intel Corp. v. VIA Techs., Inc.,* 198 F.R.D. 525, 530 (N.D. Cal. 2000) (noting that, if plaintiff's in-house counsel were given information about technical aspects of defendant's products, defendant's licensing agreements, and marketing information, that "may provide [plaintiff] a competitive advantage in negotiating related licenses in the future").

Apple argues that "THX regards itself a competitor of Apple," and engages in certification agreements and patent licenses for "consumer electronics," which is a field that includes Apple's accused products. Apple notes that a "significant portion of THX's business is licensing." [Docket Nos. 59 at 3, 82 at 2.]

THX disputes that it engages in activities that compete with Apple, although its assertions are somewhat vague and conclusory. THX states that its business "revolves primarily around developing audio and video standards that ensure a high-quality playback experience and certifying third party products that meet those standards." Riegler Decl., ¶ 5 [Docket No. 67-1], Lee Decl., ¶ 4 [Docket No. 67-2]. THX asserts that "although THX's certification business sometimes involves licensing THX's patents to third parties so that those parties can meet the standards developed by THX, THX is not primarily in the business of licensing patents." Lee Decl., ¶ 5. In a supplemental submission, somewhat cryptically, THX informed the court that THX is considering certifying mobile phones and tablets, among other products, and that this new certification program is not for speaker systems. [Docket No. 85.] THX provides no other

information about the certification program now under consideration, including whether THX intends to license patents for mobile phone and tablet certifications, and if so, in what subject areas. [Docket No. 87.]

The fact that THX is considering operating its certification business in the mobile telephone and tablet computer markets for areas beyond speaker systems increases the likelihood that THX will be certifying products, and potentially providing licenses for products that compete with the accused products in this case. [Docket No. 86.] Access to information about Apple's licensing agreements may thus provide THX with a competitive advantage in negotiating related licenses in the future, particularly with Apple's competitors in the mobile or tablet consumer electronics field. *Intel Corp.,* 198 F.R.D. at 530.

### B. Riegler and Lee

As previously noted, THX licenses patents in connection with its certification business. *Id.* at ¶ 3. Riegler provides legal advice to THX on its certification agreements. Supp. Riegler Decl. ¶¶ 2-4. Nearly all of the certification agreements include licenses for THX trademarks (e.g., to allow the third parties to indicate that their products are certified by THX). *Id.* Most of them include a license to THX know-how and/or trade secrets, and some include a license to THX patents. *Id.* Although Riegler has not provided information about the role that he would play in THX's expanded certification program for mobile phones and tablets, based on the information provided by THX to date, it appears that he would continue to play a role similar to his current one. Riegler also provides legal advice relating to business contracts, non-disclosure agreements, agreements with service providers, vendors and independent contracts (including requirements for assigning to THX any inventions arising from the vendor's or contractor's work for THX), and business development agreements for collaboration, strategic partnership, or co-branding. *Id.* at ¶ 4.

Riegler states that he does not advise THX on any financial or economic matters such as royalty rates, terms of payment, amount of fees, or the economic prudence or advisability of deals or business arrangements. *Id.* at ¶ 6. He works with THX business personnel, who determine the terms of the agreements or licenses. In this role, he drafts or reviews contract language to

ascertain the scope of the terms to include in the agreements and licenses. *Id.* Riegler also discusses or negotiates the legal terms of the licenses or agreements with opposing counsel for third parties. *Id.*

Riegler is responsible for managing this lawsuit, including managing the activities of THX's outside counsel, Perkins Coie, and advising THX on legal matters related to the case. Riegler Decl. at ¶ 16.

Lee is the only lawyer employed by THX; she reports to Riegler. Lee Decl. ¶ 3. As with Riegler, Lee's description of her job duties is vague. She provides legal advice for certification agreements, a portion of which include a license to THX patents. She also provides legal advice related to a variety of other business contracts, including non-disclosure agreements, agreements with service providers, vendors and independent contracts, and business development agreements. Supp. Lee Decl. ¶ 4. Lee assists Riegler and the THX business personnel by drafting or reviewing contract language. She also discusses and negotiates the legal terms of licenses or agreements with opposing counsel for third parties. *Id.* at ¶ 6. Lee states that she does not "participate in any strategic business decisions outside of legal advice, and only participates in the "legal dimensions of business decisions." Lee Decl. ¶ 11. Like Riegler, Lee engages in negotiations and advising related to licensing. She appears likely to continue to play a similar role in THX's expanded certification program for mobile phones and tablets.

Apple argues that Riegler and Lee are engaged in competitive decision-making, particularly with regard to their role in licensing. Apple notes that THX identified two licensing agreement to one of the patents-in-suit – at least one of which pertains to consumer electronics – for which Riegler and Lee both provided advice. Apple argues that their involvement with licensing make them both competitive decision-makers, because their advice and counsel impacts licensing decisions. The court instructed THX that if it wished to persuade the court that Riegler and Lee should gain access to Apple's sensitive financial and licensing information, THX would need to provide detailed information about their duties and any potential work that would entail competitive decision-making. *See* Order to Submit Supplemental Information [Docket No. 65]. At the February 4, 2016 hearing, the court once again instructed THX that it should provide much

6

1   more detailed information from Riegler and Lee, particularly with regard to their role in licensing.
2   Feb. 4, 2016 H'rg Tr. 11:4-16; 13:5-8; 15:2-12 (instructing THX to provide detailed information
3   about Riegler and Lee's role in licensing and competitive decision-making).
4         However, THX, who is in sole possession of this information, has remained vague. THX
5   is even more vague as to its contemplated expansion of its certification program to handheld
6   devices, including mobile phones and tablets. It has provided no information about the scope of
7   the certification program or the types of patents THX may be licensing in relation to this
8   certification program. The court concludes that Riegler and Lee are likely to engage in some
9   competitive decision-making with regard to licensing. Granting them access to Apple's highly
10  confidential licensing information risks putting Apple at a competitive disadvantage, particularly
11  in light of THX's revelation that it is contemplating a new certification program. This program
12  may well involve certification of and licensing patents to Apple's competitors in the mobile phone
13  and tablet market.
14        Although Lee and Riegler have agreed to treat Apple's information with the strictest
15  confidence, they may nonetheless be unable to compartmentalize it. In the scope of working on
16  THX's licenses, which could soon include licenses related to mobile phones and tablet computers,
17  there is a significant risk that Riegler and Lee will be reviewing agreements for THX to certify
18  and/or license patents to Apple's competitors. Access to Apple's licensing information may—
19  even unconsciously— influence their approach in crafting THX's licensing agreements; barring
20  them from access to such documents is a reasonable means to mitigate that risk.
21        However, the court reaches a different outcome with respect to financial information.
22  THX only requests that Riegler and Lee be given access to "financial...information reasonably
23  necessary for the Receiving Party to make decisions related to settlement and case valuation."
24  THX's Proposal § 9(b)(iii).
25        At the hearing, the court asked Apple what risks were posed by Riegler and Lee's access to
26  this narrow field of financial information. Apple gave two examples: the costed bills of materials
27  (which detail the cost Apple pays for each component in the accused products), and the quarterly
28  financial reports with U.S. sales information for each accused product. Feb. 4 H'rg Tr. 8:5- 9:2.

7

However, Apple did not actually explain the basis for its concern. Nothing in the record suggests that THX makes products that would compete with Apple's accused products, or explains how the pricing of the components, or sales figures for Apple's products would trigger any competitive decision-making concerns based on Riegler's and Lee's responsibilities.

The court determines that the material that Apple seeks to shield from Riegler and Lee is akin to the sensitive financial information typically accessed under a protective order in litigation. The record does not support of finding of competitive risk that would justify barring Riegler and Lee from accessing it. Moreover, THX has limited its request to "financial...information reasonably necessary for the Receiving Party to make decisions related to settlement and case valuation." Courts within this district have recognized that disclosure of sensitive financial information to an opponent's in-house counsel may be necessary for evaluating settlement. *See Shared Memory Graphics, LLC v. Apple, Inc.,* No. C–10–2475 VRW (EMC), 2010 WL 4704420, at *2 (N.D. Cal. Nov.12, 2010) (generally barring plaintiff's house counsel from accessing defendants highly confidential information, but finding that the protective order should permit in-house counsel access to sensitive sales and profit information so that in-house counsel could fully participate in settlement negotiations); *Vasudevan Software, Inc. v. International Business Machines,* No. C09–05897 RS (HRL), 2010 WL 3629830, at *2 (N.D. Cal. Sept.14, 2010) ("[T]he Court is sensitive to the fact that in-house counsel to a party, in most circumstances, needs to have some access to the opposing party's confidential financial information to understand the potential damages at issue and thus make an informed decision with respect to any possible settlement of the lawsuit.").

### C. Conclusion

After conducting a counsel-by-counsel and case-specific evaluation, and balancing the risks to the parties, the court finds that it is reasonable to bar both Riegler and Lee from accessing AEO licensing information, but that they should be allowed access to AEO financial information that is "reasonably necessary" to their meaningful participation in settlement discussions and valuation of the case.

The court orders the parties to file a stipulated finalized version of their proposed

protective order, consistent with the court's rulings set forth above and laid out at the February 4, 2016 hearing, and to submit it for court approval **within fourteen days of the date of this order.**

### III. WHETHER THX'S INITIAL DISCLOSURES AND RESPONSE TO INTERROGATORY NO. 6 ARE ADEQUATE

Apple moves to compel THX to supplement its initial disclosure on damages pursuant to Federal Rule of Civil Procedure Rule 26(a)(1)(A)(iii), as well as its response to Interrogatory No. 6, which calls for damages-related information.

THX's initial damages disclosure states that THX intends to seek money damages in an amount not less than a reasonable royalty for the lives of the '483 and '340 patents. It also incorporates by reference its response to Interrogatory No. 6.

Interrogatory No. 6 asks:

> For each of the THX Patents-in-Suit, describe in detail the basis, measure, and proper calculation of any and all damages sought in this Litigation, including without limitation: the measure and proper calculation, if any, of a reasonable royalty, royalty base, and royalty rate; lost profits; price erosion; and any claim of willful infringement.

THX's response to Interrogatory No. 6 includes a voluminous amount of text and information about general theories of patent damages. However, it reveals very little substantive information about THX's actual claimed damages in this litigation. *See* THX's responses to Interrogatory No. 6, Exhibit 1 [Docket No. 83-1]. Boiled down, it provides the following specific information about THX's claimed damages: THX 1) seeks a reasonable royalty as its measure of damages (and not lost profits or damages from price erosion); 2) seeks damages from March 14, 2013 to the resolution of the case; and 3) identifies March 2013 as the date of the hypothetical negotiation. The response also makes additional statements about factors or information THX may consider relating to the calculation of damages, but does not provide clear answers about the basis, measure, and proper calculation of damages it seeks in this litigation. *See* THX's responses to Interrogatory No. 6, Exhibit 1 [Docket No. 83-1].

#### A. Legal Standards

As part of the mandatory and self-executing initial disclosure requirements, Rule 26(a)(1)(A)(iii) states: "A party must, without awaiting a discovery request, provide to the other parties

9

a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii).

When served with interrogatories, the responding party must serve its answers and any objections within 30 days. Fed. R. Civ. P. 33(b)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). An answer to an interrogatory should be complete in itself and should not refer to the pleadings or other documents:

> [A]n answer to an interrogatory must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.

*Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000) (citations and quotation marks omitted).

### B. Analysis

Apple moves to compel THX to: 1) provide a further supplement identifying THX's claimed royalty rate, royalty base, and total damages sought by year; 2) make available for inspection and copying the documents or evidentiary material upon which each computation is based, unless privileged or protected from disclosure; and 3) provide a log for any documents or evidentiary material withheld on the basis of a claim of privilege. THX argues that its initial damages disclosure and response to Interrogatory No. 6 are sufficient at this early stage in the case, and that a detailed calculation of damages is premature because it has not received certain Apple documents. THX notes that it will provide an expert report on damages later in the case.

THX's disclosure and responses are insufficient, for they do not provide any specifics as to THX's basis for damages in this case. Courts in this district have compelled patent plaintiffs to provide the factual bases for their damages claim through initial disclosures and written discovery, over protestations that responsive information will be forthcoming through expert reports. In *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 279 (N.D. Cal. 2015), the court reviewed a patent damages interrogatory that is nearly identical to the one presented in this

10

1  case. The court rejected plaintiff's argument that it would respond when it served its expert report,
2  and granted a motion to compel plaintiff to supplement its Rule 26(a)(1)(A)(iii) disclosures and its
3  response to defendant's patent damages interrogatory to provide, among other things, the amount
4  of damages sought under each of its asserted patent damages theories and to apportion damages
5  between each asserted patent. *See also Mobile Storage Tech., Inc. v. Fujitsu Ltd.*, No. C 09-03342
6  JF (PVT), 2010 WL 1292545, at *1 (N.D. Cal. Mar. 31, 2010) (granting a motion to compel patent
7  plaintiff to provide the factual basis for its damages claim).

8        THX argues that these cases are distinguishable because the plaintiffs in *Corning Optical*
9  and *Mobile Storage* were compelled to provide their supplemental responses to interrogatories
10 later in the case, at a time when the plaintiff is expected to have formed at least an initial case
11 value assessment. THX points out that discovery began less than a year ago, there is currently no
12 case management schedule beyond the May 25, 2016 claim construction hearing, and there is no
13 deadline set for the close of fact discovery or for opening expert reports. THX's reliance on the
14 "early stage" of litigation is misplaced. THX, as the plaintiff, was responsible for pre-filing
15 investigation under Rule 11, and must have some basis for its claim for damages. *Brandywine*
16 *Commc'ns Techs., LLC v. Cisco Sys., Inc.*, No. C 12-01669 WHA, 2012 WL 5504036, at *2 (N.D.
17 Cal. Nov. 13, 2012) ("[Rule 26] initial disclosures does not require a full exposition of the type
18 required at trial or in an expert report but it does expressly require an initial computation and
19 disclosure of the evidence that will be relied on to the full extent the patent plaintiff could or
20 should know of it in the exercise of the type of pre-suit diligence required by Rule 11"); *Eon Corp*
21 *IP Holding LLC v. Sensus USA Inc.*, No. C-12-01011 EMC (EDL), 2013 WL 3982994, at *1
22 (N.D. Cal. Mar. 8, 2013) (noting that a plaintiff must have a basis for its damages when it files
23 suit).

24       Indeed, in *Brandywine*, the court analyzed the extent to which Rule 26(a) requires a patent
25 plaintiff to disclose and specify damages at the *outset* of ligation, even when some of the
26 necessary information lies with the accused infringer. The court held that the patent plaintiff
27 "must nonetheless do the best it can on pain of preclusion, subject to supplementation as more
28 information becomes available." 2012 WL 5504036 at *1. It ordered the plaintiff to disclose its

11

claimed royalty rate, royalty base, the reasonable royalty for each accused product, the royalties that it and/or its predecessors in interest had already received for licensing its own patents in suit, and some of the licenses it contended were comparable. *Id.* at *1-2. Notably, the *Brandywine* court analyzed the information the plaintiff was required to provide as part of its initial disclosures, and noted that the parties were "still in the early stages of the case." *Id.* at *1. The court concluded that the initial disclosures require an initial computation and disclosure of evidence that will be relied on to the full extent the patent plaintiff could or should know of in the exercise of the type of pre-suit diligence required by Rule 11. *Id.* at *2.

THX has had ample time to come up with at least an initial assessment of its calculation of damages. This case was filed over three years ago. Although it was stayed during *inter partes* review proceedings, the stay was lifted, at THX's urging, over nine months ago. A patent plaintiff must respond to interrogatories and provide Rule 26 disclosures based on the information it has or can reasonably be expected to have at that point in the case, subject to subsequent supplementation as the facts develop through discovery. *See Corning Optical*, 306 F.R.D. at 279 ("[t]o be sure, new information may come to light as the case proceeds that might drastically alter [plaintiff's] positions. But Rule 26(e) provides a solution for that: supplementation.").

THX relies on *Eon Corp* to argue that the parties and the court agreed "that requiring a specific computation of the royalty rate would be premature but that otherwise Plaintiff would comply with Rule 26." 2013 WL 3982994 at *3. However, even in *Eon Corp*, the court ordered plaintiff to amend its initial disclosures to respond to specific questions including: "whether Plaintiff believes that the entire sale of the handsets or network components is subject to inclusion in the royalty base (based upon an entire-market value rule analysis) or, if not, what portion of the sales of the accused products can be attributed to the patented functionality; whether Plaintiff has a licensing policy and, if so, whether that licensing policy is applicable to the current action; and whether Plaintiff is seeking a lump-sum royalty or a running royalty." *Id.* at *2-3.

THX should be in the position to provide some significant details about its alleged damages. By way of example, THX's present interrogatory response states that a "royalty base may be calculated by determining the total revenue for all Accused Products between March 2013

through the resolution of the case, minus the cost of the same," however, THX does not state whether it believes that the entire sale of the accused products is subject to inclusion in the royalty base or whether a portion of the sales should be attributed to the patented functionality. THX's Second Supp. Response [Docket No. 83-1] at 6. *See also Brandywine*, 2012 WL 5504036, at *2-3 (patent plaintiff in early stages of case should be able to provide claimed royalty rate, royalty base, amount of royalties plaintiff has already received for licensing the patents in suit, at least some of the licenses that it thinks are comparable).

For the foregoing reasons, the court orders THX to supplement its response to Apple's damages-related Interrogatory No. 6 and its damages-related disclosures required by Rule 26(a)(1)(A)(iii), to the best of its ability with the information currently available to it, subject to later supplementation based on additional information obtained through discovery. Additionally, THX promptly shall make available for inspection and copying all documents and other evidentiary material on which the reasonable royalty computation is based, except for those privileged or protected from disclosure, as required under Rule 26(a)(1)(A)(iii). THX shall serve its supplemented responses and disclosures **within fourteen days of this order.**

### C. Conclusion

For the foregoing reasons, Apple's motion to compel THX to supplement its response to Interrogatory No. 6 and to supplement its initial disclosure under Rule 26(a)(1)(A)(iii) is granted.

**IT IS SO ORDERED.**

Dated: May 13, 2016

Donna M. Ryu
United States Magistrate Judge