1   Eric L. Wesenberg, Bar No. 139696
    EWesenberg@perkinscoie.com
2   Christopher L. Kelley, Bar No. 166608
    CKelley@perkinscoie.com
3   Kenneth J. Halpern, Bar No. 187663
    KHalpern@perkinscoie.com
4   Victoria Q. Smith, Bar No. 236045
    VSmith@perkinscoie.com
5   Andrew N. Klein, Bar No. 300221
    AKlein@perkinscoie.com
6   PERKINS COIE LLP
    3150 Porter Drive
7   Palo Alto, CA 94304-1212
    Telephone: 650.838.4300
8   Facsimile: 650.838.4350

9   Attorneys for Plaintiff
    THX Ltd.

10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14  THX LTD.,                          | Case No. 3:13-CV-01161-HSG (DMR)

15                  Plaintiff,          | **THX LTD.'S NOTICE OF MOTION AND
                                          MOTION TO STRIKE PORTIONS OF
16          v.                            APPLE INC.'S RULE 3-3 INVALIDITY
                                          DISCLOSURES**
17  APPLE INC.,

18                  Defendant.          | Date:        September 29, 2016
                                          Time:        2:00 p.m.
19                                        Courtroom:   10, 19th Floor
                                          Judge:       Hon. Haywood S. Gilliam, Jr.
20

21

22

23

24

25

26

27

28

THX MOTION  TO STRIKE PORTIONS OF
                                          APPLE'S RULE 3-3 INVALIDITY
                                          DISCLOSURE., NO. 3:13-CV-01161-HSG (DMR)

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT .......................................................................................................... 3

    A.    APPLE'S CHARTS DO NOT COMPLY WITH THE RULE 3-3 REQUIREMENT TO IDENTIFY WHERE EACH LIMITATION IS FOUND ............................................................................................................... 3

        1.    Apple's Failure to Provide Meaningful Disclosure Is Exemplified in Its Charts for Anderson, JBL Aquarius 4, and Nokia Speakers ................. 5

            a.    The Anderson Charts Consist of Extensive Unanalyzed Block Quotes and Figures that Do Not Identify Where the Claim Limitations Are Found ............................................. 6

            b.    The JBL Aquarius 4 Charts Reproduce the Same Overview Drawings and Marketing Text for Every Limitation ................... 10

            c.    The Nokia 3361, 3395, and 3315 Charts Repetitively Show Only Exterior Views, Unrevealing Interior Views and Irrelevant Text .............................................................. 11

        2.    Apple's Other Charts Suffer From Similar Defects ................................. 14

        3.    Apple Designed Its Charts to Avoid Commitment to An Invalidity Position ............................................................................................. 15

    B.    APPLE'S CHARTS FAIL TO IDENTIFY COMBINATIONS ALLEGED TO RENDER THE CLAIMS OBVIOUS  OR OBVIOUSNESS THEORIES ..................................................................................................... 18

    C.    THX IS PREJUDICED BY APPLE'S FAILURE TO PROVIDE ADEQUATE INVALIDITY CONTENTIONS ................................................... 23

III.  CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

CASES                                                                                                  PAGE(S)

*Allure Energy, Inc. v. Nest Labs, Inc.*,
    84 F. Supp. 3d 538, 541-42 (E.D. Tex. 2015)..........................................................................24

*Avago Techs. General IP PTE Ltd. v. Elan Microelectronics Corp.*,
    No. C04-05385 JW, 2007 WL 2103896 (N.D. Cal. Jul. 20, 2007)...........................................4

*Bayer Healthcare Pharm., Inc. v. River's Edge Pharm, LLC*,
    2015 WL 11142427 (N.D. Ga., May 21, 2015) .....................................................................20

*Bender v. Infineon Technologies North America Corp.*,
    No. C09-02112 JW, 2010 WL 964197 (N.D. Cal. Mar. 16, 2010)............................................4

*Collaborative Agreements, LLC. v. Adobe Sys., Inc.*,
    Case No. 15-cv-03853-EMC, 2016 WL 1461487 (N.D. Cal., Apr. 14, 2016) ....................1, 11

*IXYS Corp. v. Advanced Power Tech., Inc.*,
    Case No. C 02-03942 MHP, 2004 WL 1368860 (N.D. Cal. June 16, 2004)...........................19

*KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398 (2007)........................................................................................................21, 22

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
    No. C 12–00852 WHA, 2012 WL 4097740 (N.D. Cal., Sept.17, 2012) .............................4, 19

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-CV-5341 YGR, 2014 WL 690161 (N.D. Cal. Feb. 21, 2014)....................................24

*Mitsubishi Elec. Corp. v. Sceptre, Inc.*,
    No. 2:14-CV-04994-ODW, 2015 WL 2369557 (C.D. Cal. May 18, 2015)
    (applying N.D. Cal. Patent L.R.s) .........................................................................................19

*MyMedicalRecords, Inc. v. Walgreen Co.*,
    No. 2:13-CV-00631-ODW, 2013 WL 6834639 (C.D. Cal. Dec. 23, 2013) ...........................24

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006)................................................................................11, 13, 20

*Power–One, Inc. v. Artesyn Techs., Inc.*,
    599 F.3d 1343 (Fed. Cir. 2010).............................................................................................22

*Procter & Gamble Co. v. Teva Pharm. USA, Inc.*,
    566 F.3d 989 (Fed. Cir. 2009)...............................................................................................21

*Shared Memory Graphics LLC v. Apple, Inc.*,
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) ..................................................................................4

*Sick A.G. v. Omron Sci. Techs. Inc.*,
    No. C 06-2028 CW (MEJ), 2007 WL 1223675 (N.D. Cal. Apr. 24, 2007).............2, 18, 19, 22

*Theranos, Inc. v. Fuisz Pharma, LLC*,
    No. 11-cv-05236-YGR, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012)...................................4

*West v. Jewelry Innovations, Inc.*,
    No. C 07-1812 JF, 2008 WL4532558, at *4 (N.D. Cal. Oct. 8, 2008) ...................................24

*Zest IP Holdings, LLC v. Implant Direct MFG, LLC*,
    No. 10CV0541-GPC-WVG, 2014 WL 358430 (S.D. Cal. Jan. 31, 2014) .............................20

**OTHER AUTHORITIES**

Patent Local Rule 3-1(c) ........................................................................................................4, 16

Patent Local Rule 3-3 ............................................................................................................. *passim*

Patent Local Rule 3-3(b) ........................................................................................................ *passim*

Patent Local Rule 3-3(c) ........................................................................................................ *passim*

1

**NOTICE OF MOTION AND MOTION**

2

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on September 29, at 2:00 p.m., or as soon thereafter as the

4

matter may be heard in the courtroom of the Honorable Haywood S. Gilliam, Jr., located at 450

5

Golden Gate Avenue, San Francisco, California, Plaintiff THX Ltd. ("THX") will, and hereby

6

does, move to strike portions of Apple Inc.'s Rule 3-3 Invalidity Disclosures.  This motion is

7

based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files

8

in this action, and on any other matter the Court may consider.

9

**MEMORANDUM OF POINTS AND AUTHORITIES**

10

**I.     INTRODUCTION**

11

Apple's invalidity contentions are not compliant with the Northern District's Patent Local

12

Rules.  The Rules are designed to "get the parties to commit to positions early on in the litigation

13

and stick to them absent good cause."  *Collaborative Agreements, LLC. v. Adobe Sys., Inc*., Case

14

No. 15-cv-03853-EMC, 2016 WL 1461487, at *3 (N.D. Cal., Apr. 14, 2016).  In order to commit,

15

however, a party must first meaningfully and clearly state positions to which it can be held.

16

Specifically, Patent Local Rule 3-3 requires invalidity disclosures to specifically identify where in

17

each piece of prior art the claim limitations are found, enumerate obviousness combinations, and

18

disclose invalidity theories.  Apple's charts do none of these things.

19

Apple's invalidity charts are voluminous and, if length correlated with substance, THX

20

would have no cause to complain.  Unfortunately, many of Apple's disclosures are lengthy

21

because Apple has filled them with the same extensive block quotations for each and every

22

element, while failing to identify what parts of each reference apply to the individual elements of

23

the claims.  The resulting charts are exponentially larger than they should be or would be if Apple

24

had fairly identified only the passages relevant to each claim limitation.  The problem is not

25

merely that the charts are overlong.  What makes Apple's charts unacceptable is that they quote

26

page after page of source material for each limitation but provide no explanation whatsoever of

27

how any of this material supposedly relates to the claim elements.  Apple thereby conceals

28

whatever arguments it intends to make (and may not even have formed a theory as to how the art

1  is relevant) while obliging THX to guess as to what Apple's arguments will ultimately be.  In so

2  doing, Apple has sought to preserve maximum flexibility for itself with charts that make zero

3  commitment as to Apple's position on how the prior art references relate to the claims.  This falls

4  well short of what the Patent Local Rules demand.  *See Sick A.G. v. Omron Sci. Techs. Inc.*, No.

5  C 06-2028 CW (MEJ), 2007 WL 1223675, at *2 (N.D. Cal. Apr. 24, 2007) ("The Patent Local

6  Rules are designed to force the parties to explicitly state their theories of the case and to adhere to

7  those theories once disclosed.  The danger here is that it will be difficult for the parties and the

8  District Court to determine exactly which theories [defendant] has stated, and it will be difficult

9  to later force [defendant] to adhere to those theories.").

10      Apple's invalidity disclosures name 25 references for which it has prepared claim charts

11  that purport to map material describing or constituting the prior art onto individual limitations of

12  the patent claims.  In addition, Apple provided discussions of "Core Concepts" and "Reasons to

13  Modify, Extend or Combine Claimed Concepts" that occupy sections II and VI of its obviousness

14  cover pleading, and attached a list of some 500 additional uncharted references.  Three

15  fundamental defects in Apple's invalidity submission animate this motion.  First, the charts fail to

16  clearly identify or commit Apple to any theory as to how passages or source material from the

17  charted prior art references relate to the features of the claims.  Second, Apple's discussion of

18  "Core Concepts" or "Reasons to Combine Claimed Concepts" does not commit Apple to any

19  specific obviousness combinations and fails to provide any actual disclosure of which specific

20  combinations, or rationales for those combinations, Apple intends to advance.  Third, Apple's

21  bare enumeration of some 500 references without further explanation of their relevance is

22  insufficient to commit Apple to any invalidity position or indeed to provide any part of the

23  disclosure the Rules require.

24      Because Apple persisted with non-compliant disclosures until after the close of claim

25  construction, THX has been prejudiced.  THX raised the issue with Apple in October, 2015,

26  shortly after Apple served its contentions, again in December, and again in its March, 2016

27  opposition to Apple's motion to amend its invalidity contentions.  (Declaration of Kenneth

28  Halpern ("Halpern Decl.") Ex. 1 (October 21, 2015 Letter from W. Liang to B. Conley), Ex. 2

1   (December 23, 2015 Letter from V. Smith to B. Conley).)  THX did not know and thus could not

2   take account of Apple's invalidity theories, despite THX's repeated attempts to compel Apple's

3   compliance with the Patent Local Rules, in developing its claim construction positions, while

4   Apple enjoyed the benefit of detailed and specific infringement contentions from THX.  For these

5   reasons, Apple should not be permitted to amend its charts to salvage them.

6        In sum, Apple's invalidity charts A-N, P-S, and U-X should be struck, as should its list of

7   500 uncharted references.  With regard to obviousness, Apple should be limited to the two

8   specific combinations that it adequately presents in section VII of its invalidity submission,

9   lettered A and F.

10  **II.**   **ARGUMENT**

11       **A.**   **APPLE'S CHARTS DO NOT COMPLY WITH THE RULE 3-3**
12                **REQUIREMENT TO IDENTIFY WHERE EACH LIMITATION IS**
                  **FOUND**

13       Patent Local Rule 3-3(c) requires "[a] chart identifying where specifically in each alleged

14  item of prior art each limitation of each asserted claim is found…."  Patent L.R. 3-3(c).   As a

15  preliminary matter, Apple's Amended Invalidity Contentions Cover Pleading ("AAICCP") cites

16  *some 500* allegedly invalidating references, yet it provided charts for only 25 of them.  (Halpern

17  Decl., Ex. 11 at 75-99.)  Patent Local Rule 3-3(c) indisputably requires a chart for *each* alleged

18  item of prior art and, therefore, the prior art for which Apple did not provide a chart should be

19  struck.  Moreover, with a few exceptions, Apple's charted references are constructed to evade the

20  requirements of Patent Local Rule 3-3(c).  They contain quotations of text from source documents

21  and duplication of images but they are devoid of any explanation of how the quoted text and

22  copied images demonstrate the limitations are present in the prior art.

23       The unvarying format of Apple's charts is that each claim chart box is composed of three

24  elements: (i) the ***introductory formula***, which repeats the language of a claim element and

25  asserts, without explanation, that this claim element is found in the cited prior art, (ii) the ***citation***

26  ***and quotation*** of text and images from documents either constituting published prior art or

27  describing physical prior art, and (iii) the ***appeal to obviousness***, which identifies no particular

28  combination or rationale, but references various sections of Apple's compendium of obviousness

1    arguments.  None of these components meet Apple's obligation under Rule 3-3(c) to "provide a

2    crystallized view of [its] invalidity theories."  *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C

3    12–00852 WHA, 2012 WL 4097740, at *3 (N.D. Cal., Sept.17, 2012):

4         (i) The rote assertion of invalidity in the ***introductory formula*** is not adequate to comply

5    with Rule 3-3(c)'s requirement to specifically identify where each claim limitation is found in

6    each piece of prior art.  *See Theranos, Inc. v. Fuisz Pharma, LLC*, No. 11-cv-05236-YGR, 2012

7    WL 6000798, at *4 (N.D. Cal. Nov. 30, 2012) ("In patent litigation, vague and conclusory

8    contentions are inadequate"; rejecting contentions under Patent Local Rule 3-1(c) that merely

9    repeated the claim language without specifically pointing out where the limitation was found in

10   the accused device) (collecting cases).

11        (ii) It is also not sufficient to provide only block quotations without any explanation, as

12   Apple does in its ***citation and quotation*** of the source materials.  If the invalidity theory cannot

13   be directly inferred from the drawings and text, and it almost always cannot, then the reader is left

14   guessing as to what Apple will argue at trial.  The Rules require a defendant to affirmatively

15   explain its invalidity theories; a plaintiff is not required to deduce those theories based on block

16   quotes from the source material.  *See, e.g.*, *Avago Techs. General IP PTE Ltd. v. Elan*

17   *Microelectronics Corp.*, No. C04-05385 JW, 2007 WL 2103896 at *2 (N.D. Cal. Jul. 20, 2007)

18   ("3-3(c) requires [defendant] to cite specifically within the prior art reference, not merely to the

19   entire document or some general element therein").  A plaintiff's obligations to prepare detailed

20   infringement charts under Patent Local Rule 3-1(c) are framed in language that closely mirrors

21   that of Rule 3-3(c) and this district has on multiple occasions rejected charts that quoted

22   undifferentiated blocks of text without clearly identifying how the elements of the claim were

23   shown.  Apple's Rule 3-3(c) charts suffer from the same defects as the plaintiff's Rule 3-1(c)

24   charts found deficient in *Bender v. Infineon Technologies North America Corp.*, No. C09-02112

25   JW, 2010 WL 964197 at *2 (N.D. Cal. Mar. 16, 2010), where Magistrate Judge Lloyd held that a

26   chart that "do[es] not identify specific circuitry or components that reportedly correspond to the

27   claim limitations" and instead "simply repeats the same generic descriptions and cuts-and-pastes

28   them beside each element of every claim" was not compliant with the rules.  *See also, Shared*

*Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025-26 (N.D. Cal. 2010) (finding claim charts non-compliant because they failed to indicate which structures correspond to recited elements such as a bus, to show how data flows, or how bus connects to memory; contentions held "too vague to provide fair notice as to what components and circuitry of the accused products infringe their patents").

(iii) Finally, Apple's ***appeal to obviousness***, with two exceptions discussed below, advances no specific combinations.  Instead, it asserts that each charted piece of prior art "anticipates and/or renders obvious" the claims without specifying which, and fails to identify which other references, if any, are part of the proposed combination, or to provide any theory of obviousness.  This expressly violates Rule 3-3(b)'s requirements to identify (i) whether each item of prior art anticipates the claim or renders it obvious, (ii) the combinations of prior art being advanced, and (iii) the theory of obviousness.  These generic and unrevealing assertions of obviousness add nothing to Apple's fundamentally defective charts.

## 1.  Apple's Failure to Provide Meaningful Disclosure Is Exemplified in Its Charts for Anderson, JBL Aquarius 4, and Nokia Speakers

The problem with Apple's charts is not merely that they lack the appropriate formal structure; the problem is that they fail to commit Apple to any particular theory of invalidity but disclose only that Apple intends to make an argument at some later date based on the specific passages quoted.  The claims of the patents in suit are directed toward an entire speaker assembly, the components of which are separate claim limitations.  Thus, in order to explicitly identify the components in an accused speaker assembly that supposedly correspond to each claim limitation, Apple must do more than show the whole assembly.  It must point out the specific components of the assembly that correspond to each claim limitation in order to meet Patent Local Rule 3-3(c)'s express requirement to "identify where specifically in each alleged item of prior art each limitation of each asserted claim is found."  Since the citation and quotation portion of the chart is typically quite lengthy and contains numerous quotations of most or all of the passages bearing on the sound duct features of the prior art speaker, the selection of these passages rarely, if ever, meaningfully narrows the focus to specific parts of the prior art system.  The invalidity disclosure

1 | commits Apple to nothing more than that it may rely on the reference, in some manner not yet
2 | detailed.

3 | Omitting any explanation of how the prior art speakers described in the citation and
4 | quotation portions of its claim charts embody each part of the claims creates two problems.  First,
5 | it forces THX to guess as to what correlations Apple intends to draw between the prior art and the
6 | claims.  Second, where an argument cannot even be guessed, it allows Apple to avoid addressing
7 | the fact that it has no plausible invalidity contention at all and relieves Apple of its obligation to
8 | commit itself to a position.

9 | Space (and respect for the Court's patience) preclude us from presenting a detailed look at
10 | the invalidity charts for each of the 25 references.  We have selected three that typify the defects
11 | of the charts as a whole.  Apple's charts for the Anderson patent (charts I-C and II-C, Halpern
12 | Decl., Exs. 3, 29) are representative of how it has charted prior art publications.  We highlight
13 | how Apple's refusal to identify how the specific claim elements are embodied in the quoted
14 | passages leaves THX without knowledge of Apple's theories and frees Apple from its obligation
15 | to commit to any part of its invalidity theory that is not self-evident.  Apple's charts for the JBL
16 | Aquarius floor speaker (charts I-G and II-G, Halpern Decl., Exs. 4, 34) highlight similar defects
17 | with regard to Apple's disclosures based on actual prior art speaker systems.  Finally, the charts
18 | for the Nokia 3361, 3395 and 3315 (charts I-J and II-J, Halpern Decl., Exs. 5, 13) are
19 | symptomatic of the problems with Apple's charts against prior art mobile phones.  As the
20 | discussion below will demonstrate, Apple's charts for these references wholly fail to disclose any
21 | features of the sound duct that Apple alleges is found in these phones.

22 |
23 | a. **The Anderson Charts Consist of Extensive Unanalyzed Block Quotes and Figures that Do Not Identify Where the Claim Limitations Are Found**

24 | Apple's charts for the Anderson patent repeatedly quote Figures 1, 2, and 3 of U.S. Patent
25 | No. 4,620,317 ("Anderson patent" or "Anderson") (duplicated below) and about half a dozen
26 | passages from the text.  (Charts I-C and II-C, Halpern Decl., Exs. 3, 29.)  The figures clearly
27 | show that Anderson is a circular radiator with a single speaker facing down towards a sloped

28 |

1    surface and radiating evenly in all directions (interrupted only by the presence of support

2    bushings 18).





13    (Halpern Decl., Ex. 3 (chart I-C) at 9-10.)

14           Given this design, Anderson fails to embody a significant number of the limitations of the

15    claims.  That alone does not establish non-compliance with the Local Rules—a party could

16    properly chart a mistaken invalidity theory as long as the chart clearly indicated which component

17    it alleged to correspond to each limitation.  But when it is not apparent which component of the

18    prior art is asserted to correspond to a claim limitation, the chart must furnish that information.

19    Patent L.R. 3-3(b) ("A chart identifying where specifically in each alleged item of prior art each

20    limitation of each asserted claim is found.").  Claim 1 of U.S. Patent No. 7,433,483 ("'483

21    patent"), asserted in this action, reads as follows:

22                   A narrow profile sound system, comprising:

23                   a drive unit disposed on a mounting surface, said mounting surface
                     forming a barrier acoustically isolating the drive unit's forward
24                   radiation from its rearward radiation;

25                   a sound reflecting surface facing the drive unit and substantially
                     parallel with the mounting surface;
26
                     and sound damping material disposed between said sound reflecting
27                   surface and the mounting surface, the sound reflecting surface and
                     the mounting surface defining a bottom and top of a narrow sound
28                   duct terminating in an elongate output slot, with the sound damping

1

material forming sides of the sound duct, whereby forward
radiation from the drive unit is turned at a substantially right angle
and channeled along a straight path towards the output slot;

2

3

wherein the sound damping material forms an outer shape of the
sound duct which reduces sound reflections at the end of the sound
duct opposite the output slot and thereby mitigates standing waves.

4

5

The following limitations, identified in the chart as [1C], [1D] and [1E], are nowhere

6

identified in the Anderson reference:

7

[1C] - "a sound reflecting surface facing the drive unit and
substantially parallel with the mounting surface"

8

9

[1D] - "sound damping material disposed between said sound
reflecting surface and the mounting surface"

10

[1E] - "the sound reflecting surface and the mounting surface
defining a bottom and top of a narrow sound duct terminating in an
elongate output slot, with the sound damping material forming sides
of the sound duct"

11

12

13

With regard to element [1C], there is plainly no surface in Anderson that is "substantially

14

parallel" to the surface in which the drive unit is mounted and, while Apple reproduces the above

15

images from the Anderson patent, it does not label or otherwise supplement the image to identify

16

a surface.  (Chart I-C, Halpern Decl., Ex. 3 at 9-10.)  Because the *citation and quotations* that

17

make up most of Apple's chart are not accompanied by any explanation of what surface within

18

Anderson anticipates (or renders obvious) the "sound reflecting surface" of the claim, THX is left

19

to wonder whether Apple will argue that this is found in the "generally circular base 12," "bottom

20

label 50" or something else altogether.  (*Id.* at 8-9.)

21

The situation is similar with regard to elements [1D] and [1E].  There is no sound duct

22

with sides formed of sound damping material found anywhere in Anderson's speaker design.

23

THX is left to speculate as to whether Apple is relying entirely on obviousness here or intends to

24

make some argument based on specific elements of Anderson's design.  The quotations selected

25

by Apple are of no assistance as these recite the general layout of the speaker but do not make

26

clear which element Apple contends is the "sound duct" with sides formed of sound damping

27

material.  (*Id.* at 11-15.)

28

1    Anderson plainly does not disclose any duct with sides, but by refusing to comply with the

2    Rule 3-3 requirement of "identifying where specifically" each element is found, Apple's charts

3    obfuscate the inadequacy of Anderson on this key point and deprive THX of clarity as to what

4    Apple's intentions are.  It is impossible to determine from the charts whether Apple is going to

5    argue that some aspect of Anderson's speaker embodies a duct with sides formed of sound

6    damping material, or if Apple intends to rely on obviousness, and if so, what that obviousness

7    theory would be.  Apple's charts contain no specific obviousness theories or combinations, but

8    only a generic assertion of obviousness that appears at the end of each claim limitation (*i.e.*, some

9    seven or eight times *per reference*), so that the reader cannot even tell which limitation(s) Apple

10   believes must be supplied by separate references.  For every limitation, Apple concludes:

11       To the extent not disclosed, this limitation would have been obvious in light of Anderson alone,
         Anderson in combination with the knowledge of a person of ordinary skill in the art, Anderson in
12       combination with the other charted prior art references for the '483 patent, or Anderson in
         combination with the prior art set forth in Sections III.A ("Narrow Profile Ducted Speakers Were
13       Well-Known"), III.C ("Varying the Shape of the Duct Was Well-Known"), and III.D ("Damping
         Materials Defining a Duct Were Well-Known") of Apple's Invalidity Contentions.  A person of
14       ordinary skill in the art would have been motivated to combine Anderson with these disclosures
         and/or the knowledge of a person of ordinary skill in the art for the reasons set forth in Sections
15       III.A ("Narrow Profile Ducted Speakers Were Well-Known"), III.C ("Varying the Shape of the
         Duct Was Well-Known"), III.D ("Damping Materials Defining a Duct Were Well-Known"), and
16       VI ("Reasons to Modify, Extend, or Combine Claimed Concepts").

17

18   (*See, e.g., id*.at 15.)

19   This statement specifies no obviousness combination but purports to preserve every

20   possible combination with every charted or cited reference (as well as single-reference

21   obviousness), and thus is insufficient to meet the Rule's requirements to indicate whether

22   anticipation or obviousness is asserted, to identify what combination(s) are proposed, and to state

23   the theory of obviousness.  Patent L.R. 3-3(b).  It does reference sections of a separate cover

24   pleading (AAICCP)—but, as discussed in more detail below, that document also largely consists

25   of unexplained blocks of quoted text and fails to disclose Apple's obviousness theories, with at

26   most two exceptions.

27

28

1

**b.      The JBL Aquarius 4 Charts Reproduce the Same Overview
Drawings and Marketing Text for Every Limitation**

2

3          Apple's chart for the JBL Aquarius 4 floor speaker reproduces, for every limitation, the

4  same photograph and three drawings, and a handful of text excerpts drawn from product

5  marketing literature and from the owner's manual.  (Charts Amended-I-G and Amended-II-G,

6  Halpern Decl., Exs. 4, 34.)  The photograph does not reveal anything relevant about the design of

7  the speaker.  The drawings are somewhat contradictory but the more pressing problem is that

8  Apple's *citations and quotations* fail to indicate what Apple intends to argue constitutes such

9  elements as the "sound reflecting surface facing the drive unit and substantially parallel with the

10  mounting surface" (element [1C]) or the "narrow sound duct … with the sound damping material

11  forming sides of the sound duct" (elements [1D] and [1E]).

12

13




JBL design (Chart Amended-I-G, Halpern
Decl. Ex. 4 at 6)

JBL Aquarius 4 (*Id.* at 9)

24

25          Are these embodied in the "ducted port," the "radial horn area & diffraction slot," the

26  region around the "high frequency radial horn" or is Apple, here, too, going to rely on

27  obviousness?  Each of these quoted phrases are identifying labels for features of the JBL

28

1    Aquarius 4 from the figure shown above right.  There are profound problems with each of these

2    arguments but Rule 3-3 places on Apple the obligation to be explicit about what argument it is

3    (and is not) making so that THX can focus its preparations on the case that Apple will actually

4    bring.  *Collaborative Agreements*, 2016 WL 1461487 at *3 ("The main purpose of the discovery-

5    related Patent Local Rules is to get the parties to commit to positions early on in the litigation and

6    stick to them absent good cause"), *citing O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467

7    F.3d 1355, 1364 (Fed. Cir. 2006) (noting that the Patent Local Rules are "designed specifically to

8    require parties to crystallize their theories of the case early in the litigation so as to prevent the

9    shifting sands approach to claim construction").

10        The text passages that Apple includes in its *quotations* do not add any useful information.

11    For each claim limitation, the charts reproduce the same nine pages of marketing puffery about

12    the performance characteristics of the speaker and the engineering history of the product.  (Chart

13    Amended-I-G, Halpern Decl., Ex. 4, at 3-11.)  While nine pages is too voluminous to reproduce

14    in the body of this motion, the obfuscatory, useless character of the JBL Aquarius 4 chart is

15    apparent from the fact that the chart is 539 pages long, but consists of the identical nine pages

16    repeated 59 times (once for every claim limitation).  The quoted material does not discuss a sound

17    duct or sound damping material so it provides no independent guidance as to what portion of the

18    speaker Apple intends to rely upon for its invalidity theory.

19            **c.**       **The Nokia 3361, 3395, and 3315 Charts Repetitively Show Only**

20                  **Exterior Views, Unrevealing Interior Views and Irrelevant Text**

21        The *citation and quotation* portions of Apple's charts for these Nokia phones contain

22    pictures of each of the Nokia phones before disassembly as well as (blurry) photos of the exterior

23    of what are alleged to be sealed sound-generating assemblies from each of these phones.  (Charts

24    Amended-I-J and Amended-II-J, Halpern Decl., Exs. 5, 13.)  These sealed assembly images are

25    duplicated below.  The chart also includes several irrelevant excerpts from the Nokia "User

26    Guide" manuals for these phones describing that the user can select ring tones or generate their

27    own.  (*Id.* at 4, 6-7, 12-13; repeated throughout.)

28

            -11-           THX MOTION TO STRIKE PORTIONS OF
APPLE'S RULE 3-3 INVALIDITY
DISCLOSURE., NO. 3:13-CV-01161 HSG (DMR)

1

| Photographs of Nokia Sound-Generating(?) Assemblies from revised chart I-J | | |
|---|---|---|
|  |  |  |
| Nokia 3361 (Chart Amended-I-J, Halpern Decl., Ex. 5 at 5) | Nokia 3395 (*Id.* at 11) | Nokia 3315 (*Id.* at 14) |

Apple makes no attempt to explain how these pictures correspond to any of the elements of the claim. Instead, for each element, Apple simply refers once again to these figures as if it were self-evident that they disclosed a "sound reflecting surface facing a drive unit," a sound duct lined with sound damping material and all of the various other elements of the claims. (*Id* at 5, 11, 14.) These images reveal almost nothing about what is inside the assemblies. There appears to be some kind of duct with an output facing towards the camera in each picture but, beyond that, what other elements are contained in the assembly and how they may be configured is entirely a mystery.

There are also three images of an opened 3395 phone that are likewise unlabeled and fail to identify any components alleged to correspond to claim limitations:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



Nokia 3395 (Chart Amended-I-J, Halpern Decl., Ex. 5 at 9)



Nokia 3395 (*Id.* at 10)



Nokia 3395 (*Id.* at 11)

15

16    The chart is little more than a place holder indicating Apple's intent at some later date to

17   make out an invalidity argument but at present reveals nothing about the construction of the

18   Nokia assemblies or what arguments Apple might make in the future about them.  This refusal to

19   provide ***any*** indication of where the claim limitations are found in the prior art (and thus to

20   disclose ***any*** theory of invalidity) plainly violates Apple's obligation to "crystallize [its] theories

21   of the case early in the litigation and to adhere to those theories once they have been disclosed."

22   *O2 Micro*, 467 F.3d at 1366 n.12; *see also* N.D. CAL. PATENT LOCAL RULES ADVISORY

23   SUBCOMMITTEE REPORT (2008) at 2 (stating that the patent local rules were amended in 2008 to

24   eliminate the concept of "preliminary" contentions "in favor of a single round of contentions

25   which can be modified only for good cause" because the preliminary-contention system was

26   widely perceived "as not tying litigants sufficiently to their positions") (Halpern Decl., Ex. 50).

27
28

1    Apple's failure is not excused by the argument that this is the best disclosure that it could

2    provide.  Apple has had access to examples of these phones since before it prepared the first

3    version of this chart in September 2015.  Multiple copies of these phones are available on sale

4    everyday on eBay for modest sums.  (*See* Halpern Decl., Ex. 22 (Nokia 3315); Kelley Decl. (Dkt.

5    No. 95-1) ¶¶ 8, 9, Exs. F (Dkt. No. 95-7) (Nokia 3361), G (Dkt. No. 95-8) (Nokia 3395).)  If

6    Apple intended to rely on these assemblies as the basis of an invalidity argument it should have

7    opened up the assemblies before submitting its invalidity charts and charted them in compliance

8    with Patent Local Rule 3-3(c).  Its continuing failure to do so is inexcusable.

9                    **2.      Apple's Other Charts Suffer From Similar Defects**

10    The inadequacies discussed above are not specific to the particular references discussed

11    but, rather, are symptomatic of the manner in which Apple prepared its charts and a product of its

12    refusal to provide any explanation of the significance of the citations and quotations in its charts.

13    The charts for the Advent AW810 (charts I-A and II-A, Halpern Decl., Exs. 18-19), Altec

14    Lansing LF1 / LF2 (charts I-B and II-B, Halpern Decl., Exs. 27-28), Nokia 3510 (charts

15    Amended-I-K and Amended-II-K, Halpern Decl., Exs. 23, 14) and Nokia 6100 (charts Amended-

16    I-L and Amended-II-L, Halpern Decl., Exs. 24, 15), Technics SB-530 /Panasonic SB-636 (charts

17    Amended-I-Q and Amended-II-Q, Halpern Decl., Exs. 10, 39), TIC Outdoor Omni (charts I-R

18    and II-R, Halpern Decl., Exs. 20, 21), and Onkyo GXW-5.1 (charts Amended-I-Y and Amended-

19    II-Y, Dkt. No. 89 Unredacted Ex. 3, Unredacted Ex. 4) suffer from the same defects as Apple's

20    chart for the JBL Aquarius 4.  Each one consists of a few unrevealing[1] photos of the product

21    along with blocks of general textual description and marketing matter from the product literature,

22    reproduced identically for every limitation.  Each of these speakers has a different design than the

23    Aquarius 4 and so speculation about what features Apple might correlate to the elements of the

24    claim will necessarily focus on different things in each of the charts.  However, the charts are

25    similar in that they do not specifically commit Apple to any position on invalidity whatsoever.

26

27    _____

[1] In some cases there are only exterior photos of the product, but even the charts that
28    provide interior photos simply reproduce images from the product literature without any labeling
     to specify the elements that are alleged to correspond to the claim limitations.

1   The charts for the Fujihara patent (charts I-D and II-D, Halpern Decl., Exs. 31, 30),

2   Jackson (charts I-F and II-F, Halpern Decl., Exs. 33, 32), Harris (charts I-E and II-E, Halpern

3   Decl., Exs. 51, 53), Kobayashi (charts I-H and II-H, Halpern Decl., Exs. 52, 54), Robbins (charts

4   I-N and II-N, Halpern Decl., Exs. 35, 36), Sango (charts I-P and II-P, Halpern Decl., Exs. 37, 38),

5   Tichy (charts I-S and II-S, Halpern Decl., Exs. 40, 45), Villa (charts I-U and II-U, Halpern Decl.,

6   Exs. 41, 46), Atochi (charts I-V and II-V, Halpern Decl., Exs. 42, 47), Yoshida (charts I-W and

7   II-W, Halpern Decl., Exs. 43, 48), and Hikida (charts I-X and II-X, Halpern Decl., Exs. 44, 49) all

8   suffer from the defects discussed above with respect to the Anderson patent.  While some of these

9   charts reflect that Apple went to the trouble of bolding certain language, the bolded language

10  often fails to identify the element that corresponds to the claim limitation with any clarity and the

11  charts are devoid of any labeling or narrative.  Absent an explanation of the relationship between

12  its citations and quotations and the claim elements, the charts do not commit Apple to any

13  invalidity theory.  This leaves THX to guess at Apple's theory and for those many elements

14  where even guessing as to a theory is impossible leaves THX devoid of any meaningful

15  disclosure at all.[2]

16      The charts for the Nokia 3310, 3330 and 3410 (charts Amended-I-I and Amended-II-I,

17  Halpern Decl., Exs. 12, 17) and Nokia 6360 (charts Amended-I-M and Amended-II-M, Halpern

18  Decl., Exs. 25, 16) suffer from the same failure to identify anything about the sealed speaker

19  design of the alleged prior art phone as Apple's claim charts for the Nokia 3361, 3395 and 3315,

20  detailed above.

21      **3.**    **Apple Designed Its Charts to Avoid Commitment to An Invalidity**
22              **Position**

23      Apple clearly expended significant effort to construct its invalidity charts, but it is just as

24  clear that resulting charts were carefully constructed to avoid committing Apple to any particular

25  invalidity position, or addressing the various shortfalls of its prior art.  Most prejudicially, the

26  _____

27  [2] THX has not included the charts for the Sadaie and Tomonori references in this motion
    because, even though those charts exhibit the same defects as the Anderson charts and other
    printed-publication charts, the issues relating to those two references were extensively explored in

28  the *inter partes* review proceeding and in the appeal now pending before the Federal Circuit.

1    charts are designed to leave THX in the dark as to how Apple will argue that persons of skill will

2    find key disputed elements of the claims in the alleged prior art.

3          That Apple's charts were designed to produce this result is clear from the critiques that

4    Apple has raised against THX's infringement charts, which are models of clarity by comparison.

5    Apple's conduct in this regard makes clear that its decision to provide inscrutable charts was

6    knowing and willful.  Apple applied a far more demanding standard to THX's infringement charts

7    than to its own invalidity charts.  The identical standard of specificity applies to both.  Patent L.R.

8    3-1(c) (chart must "identify[] specifically where each limitation of each asserted claim is found

9    within each Accused Instrumentality"); Patent L.R. 3-3(c) (chart must "identify[] where

10   specifically in each alleged item of prior art each limitation of each asserted claim is found").  Yet

11   Apple complained of trivial alleged defects in THX's detailed infringement charts, while refusing

12   to furnish anything close to the required level of detail in its invalidity disclosures.  For example,

13   THX's infringement charts label the components corresponding to the claim elements with

14   arrows.



| '483 Claims / Elements | Claim Language | Accused Instrumentality: Apple iPhone 6 |
|---|---|---|
| Claim 4D | wherein the baffle and the first sound reflecting surface define a sound duct terminating in a first sound output aperture proximate an outer edge of said first drive unit; | |

23   ('483, iPhone 6 chart, Halpern Decl., Ex. 7 at 14.)

24         In one instance, Apple complained that an arrow pointing to the exterior, *i.e.*, the reverse,

25   of the "sound reflecting surface" was "ambiguous" and left it unable to determine what surface

26   was identified (August 12, 2015 Letter from B. Conley to W. Liang, Halpern Decl., Ex. 6 at 2),

27   even though the exterior surface is outside the duct—and thus the interior surface is the only

28   possible component the arrow could be meant to indicate.

| '483 Claims / Elements | Claim Language | Accused Instrumentality: Apple iMac |
|---|---|---|
| Claim 1B | a sound reflecting surface facing the drive unit and substantially parallel with the mounting surface; and |  |

Sound reflecting surface (substantially parallel with mounting surface when closed)

(Halpern Decl., Ex. 55 at 3.)

In stark contrast, Apple's own charts provide no clear identification of where components are found in the prior art, as shown above.  (*See supra* section II.A.1.)  Apple has been aware of these defects since it first presented its charts.  THX explained the problems with Apple's invalidity charts on multiple occasions, including in correspondence in October and December of 2015, and again in THX's Opposition to Apple's Motion to Amend.  (Halpern Decl., Ex. 1 (October 21, 2015 Letter from W. Liang to B. Conley), Ex. 2 (December 23, 2015 Letter from V. Smith to B. Conley); Dkt. No. 95, filed on March 21, 2016.)  Nonetheless, Apple has consistently refused to update its charts or to make samples of prior art products available for meaningful internal inspection.  (Halpern Decl., Ex. 8 (March 30, 2016 email from B. Conley responding to March 29, 2016 email from C. Kelley).)  Apple notified THX that it had obtained examples of TIC GS5 "Mini" Outdoor OmniSpeaker, TIC GS10 "T-Sound" Outdoor OmniSpeaker, JBL Aquarius IV, Onkyo GXW-5.1, Panasonic SB-636, Nokia 3330, Nokia 3410, Nokia 3310, 6H6T-19A067-EC EABA715A1 (from a 2008 Lincoln Navigator), 9H6T-19A067-AA EAB602C (from a 2011 Lincoln MKZ), and Razer Mako.  (Halpern Decl., Ex. 9 at 1 (July 5, 2016 email from C. Capuyan to A. Klein).)  In each case, THX asked Apple to open the products for inspection, since there was no way to conduct an anticipation analysis if Apple refused to allow THX to see the speaker driver or the duct interior, where nearly all the claim limitations would be found, if present.  (*Id.* at 1, 3, 4 (July 5, 2016 email from A. Klein and March 24 and 29, 2016 emails from C. Kelley).)  And in each case, Apple refused.  (*Id.* at 1-4 (March 25 and 30, 2016 emails from B.

1   Conley) ("We have not disassembled these products. We are making them available for visual

2   inspection only."; "We disagree that it is 'past time for Apple to perform the kind of analysis that

3   can only proceed from opening these systems.' If you have any authority for your position, please

4   let us know.  We will let you know if and when we disassemble these devices."); (April 20 and

5   29, June 29, and July 5 emails from C. Capuyan) (stating products have not been disassembled

6   and that Apple will inform THX if and when it disassembles them).)  In effect, each of these

7   product samples has been "produced" to the same degree as Apple's inscrutable charts for

8   products such as the Nokia 3361, that is, not produced in any meaningful sense at all.  Apple has

9   thus adopted a position of knowing and open defiance of the requirement to disclose its invalidity

10  theories with specificity.

11          **B.      APPLE'S CHARTS FAIL TO IDENTIFY COMBINATIONS ALLEGED TO**
               **RENDER THE CLAIMS OBVIOUS  OR OBVIOUSNESS THEORIES**
12

13          Patent Local Rule 3-3(b) requires invalidity contentions to disclose "[w]hether each item

14  of prior art anticipates each asserted claim or renders it obvious."  Where obviousness is alleged,

15  the rule further requires "an explanation of why the prior art renders the asserted claim obvious"

16  and "an identification of any combinations of prior art showing obviousness."  *Id.*; *see Sick A.G.*,

17  2007 WL 1223675 at *2 ("A plain reading of Patent Local Rule 3-3(b) indicates that [a

18  defendant] is required to specifically identify each combination and the motivation for the

19  combination.") .

20          Apple's invalidity charts do not meet any of these requirements.  Each chart presents a

21  single reference, and states at the top that that reference "anticipates or renders obvious claims"

22  followed by a numerical list of the asserted claims of either the '483 or the '340 patent-in-suit.

23  (*See, e.g.*, Technics SB-530/Panasonic SB-636 (chart Amended- I-Q , Halpern Decl., Ex. 10.)

24  Thus, the charts commit to neither anticipation nor obviousness.  The charts also do not name any

25  other particular piece(s) of prior art to form obviousness combinations, nor do they provide any

26  explanations of Apple's obviousness theories.  Instead, for each and every limitation, as

27  illustrated *supra* at 9, Apple's chart repeats the following boilerplate paragraph identifying

28

1   literally every other reference it cites (or possibly no references) as possibly forming an

2   obviousness combination with the principal reference:

> To the extent not disclosed, this limitation would have been
> obvious in light of [the charted reference] alone, [the charted
> reference] in combination with the knowledge of a person of
> ordinary skill in the art, [the charted reference] in combination with
> the other charted prior art references for the '483 patent, or [the
> charted reference] in combination with the prior art set forth in
> [enumerated sections] of Apple's Invalidity Contentions.

7   (Chart Amended-I-Q, Halpern Decl., Ex. 10 at 15, 22, 29, 35, 42, 54, 67, 80, 87, 99, 112, 119,

8   126, 133, 145, 158, 165, 177, 186, 199, 207, 216, 223, 235, 239, 247, 254, 260, 267, 279, 291,

9   298, 304, 316, 323, 335, 342, 349, 356, 363, 375, 387, 399, 406, 412, 418, 424, 436, 449, 456,

10  465, 472, 479, 486, 498, 510, 522, 534, 547.)  The prior art set forth in the textual portion of

11  Apple's Invalidity Contentions adds a much longer list of 500 uncharted pieces of art, so that the

12  set of possible combinations Apple asserts for each charted piece of prior art is every other

13  charted piece of prior art (625 possible combinations of charted art), as well as 500 pieces of

14  uncharted art, for a total of some 275,000 two-reference combinations (and millions of three-

15  reference combinations).

16       This district has consistently held this kind of vague obviousness disclosure to be

17  improper.  It is expressly meant to preserve all possible obviousness combinations among all

18  listed pieces of prior art while defeating the purpose of invalidity charts, which is to reveal and

19  crystallize the accused infringer's theories of invalidity, not to hide them.  *IXYS Corp. v.*

20  *Advanced Power Tech., Inc.*, Case No. C 02-03942 MHP, 2004 WL 1368860, *3 (N.D. Cal. June

21  16, 2004) (the purpose of the Local Rules is to "further the goal of full, timely discovery and

22  provide all parties with adequate notice and information with which to litigate their cases, not to

23  create supposed loopholes through which parties may practice litigation by ambush").  It clearly

24  fails to satisfy Patent Local Rule 3-3(b)'s requirement to identify the combinations of prior art

25  that Apple believes render the claims obvious.  *See Life Techs.*, 2012 WL 4097740 at *3

26  ("Vaguely disclosing that one prior art can substitute for another is insufficient under our local

27  rules"); *Sick A.G.*, 2007 WL 1223675 at *2 (finding that "the purpose behind the Patent Local

28  Rules … require[s] explicit identification of each combination" of prior art); *Mitsubishi Elec.*

1   *Corp. v. Sceptre, Inc.*, No. 2:14-CV-04994-ODW, 2015 WL 2369557, at *3 (C.D. Cal. May 18,

2   2015) (applying N.D. Cal. Patent L.R.s) (finding defendants' catch-all phrase "any element of an

3   asserted claim can easily be identified by cross-reference to the same particular claim element in

4   other charted prior art reference to show that the element was known in the prior art" failed to

5   meet requirements of Patent L.R. 3-3(b)); *Zest IP Holdings, LLC v. Implant Direct MFG, LLC*,

6   No. 10CV0541-GPC-WVG, 2014 WL 358430, at *5 (S.D. Cal. Jan. 31, 2014) (finding

7   defendant's blanket statement that "each item of the prior art renders the asserted claims obvious

8   in combination with each other, or any of them, and/or in combination with features well known

9   to people with skill in the art at the time of the respective applications" failed to meet Patent L.R.

10  3.3(b)); *Bayer Healthcare Pharm., Inc. v. River's Edge Pharm, LLC*, 2015 WL 11142427 at *14

11  (N.D. Ga., May 21, 2015) ("simply listing various prior art references in a claim chart is not

12  sufficient to put a patentee on notice of why a person of skill would be motivated to combine such

13  references to find the asserted claims obvious, especially in light of the myriad number of

14  combinatorial iterations that are possible under such a theory").  In its Motion for Leave to

15  Amend Its Invalidity Contentions, Apple argued that the amount of hours and dollars it had

16  invested in finding prior art showed its diligence.  In fact, those figures reflect the extent of

17  Apple's efforts to avoid meeting its disclosure obligations by overwhelming THX with an

18  unanalyzed mass of references without "crystallizing" the obviousness theories to which Apple is

19  committed early in the litigation.  *O2 Micro*, 467 F.3d at 1364.

20           In addition, Apple's disclosures flout the Rule's requirement to ***explain*** its obviousness

21  theories.  For the required "explanation," the charts provide only the following sentence, in the

22  same endlessly repeated paragraph (as shown above for the Anderson reference):

23                   A person of ordinary skill in the art would have been motivated to
                     combine [the charted reference] with these disclosures and/or the
24                   knowledge of a person of ordinary skill in the art for the reasons set
                     forth in [enumerated sections of Apple's Invalidity Contentions
25                   cover document]

26  (*See, e.g.,* chart Amended-I-Q, Halpern Decl., Ex. 10 at 15, 22, 29, 35, 42, 54, 67, 80, 87, 99, 112,

27  119, 126, 133, 145, 158, 165, 177, 186, 199, 207, 216, 223, 235, 239, 247, 254, 260, 267, 279,

28  291, 298, 304, 316, 323, 335, 342, 349, 356, 363, 375, 387, 399, 406, 412, 418, 424, 436, 449,

456, 465, 472, 479, 486, 498, 510, 522, 534, 547.)  The cited sections of "Apple's Invalidity

Contentions" also do not provide the explanation required by Rule 3-3(b).  Instead, each section,

while purporting to address a claim limitation, consists almost entirely of unanalyzed block

quotes from various references.  For example, section C is titled "Varying the Shape of a Duct

Was Well Known," and begins with the assertions that it was well known in the prior art that the

walls of a speaker duct "could be straight, curved, or angled, or the duct could be shorter or

longer," and that "a duct could be shaped to provide a straight path from the speaker driver to the

sound output."  (AAICCP, Halpern Decl., Ex. 11 at 36.)  This is followed by a series of quotes

from the Jackson and Harris references, without discussion or analysis, that appear meant to show

that in each of those references, the duct shape could vary (and indeed, that the duct could have

any shape at all: "Harris discloses that a 'duct may be straight, curved or folded.'" (*Id.* at 37)).

But these references are not proposed for combination with any particular other

references.  The assertion is simply that individual limitations were "well known."  (*Id.* at 36.)

Plucking individual limitations from assorted prior art references to show that those limitations

were individually known has no bearing on obviousness.  It is a patent law axiom that many

patented inventions consist of combinations of elements that, separately, were known before.

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418-19 (2007) ("a patent composed of several

elements is not proved obvious merely by demonstrating that each of its elements was,

independently, known in the prior art").  The critical question is whether a skilled artisan would

have been motivated to combine the teachings of particular references to create the claimed

invention with a reasonable expectation that they would work together.  *Procter & Gamble Co. v.*

*Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009).  Apple's recitations that individual

elements were separately known shed no light on which combinations of art it proposes.

Compounding the problem, Apple lists 32 more references just in section C, that it describes as

"[a]dditional illustrative prior art disclosing the concept of varying the shape of a duct," providing

cites and block quotes but no analysis.  (AAICCP, Halpern Decl., Ex. 11 at 43-51.)  It repeats this

practice in the succeeding sections and then adds a far longer list of references it also wishes to

preserve for all possible theories of invalidity.  The total number of references that Apple lists in

1    its cover pleading as "additional, illustrative prior art" or as simply prior art patent references,

2    publications and products that "anticipate and/or render obvious the asserted claims of the '483

3    and/or '340 patents" is at least *five hundred*.  (*Id.* at 74-98 (508 listed references, less

4    redundancies with the 25 charted references, plus "all documents cited on the face" of the patents-

5    in-suit and related patents and applications).)

6         Moreover, even if this separate discussion of individual elements without proposed

7    combinations (and the preposterous list of ~500 further references) complied with the Patent

8    Local Rules—it does not—the "narrative" portion of Apple's Invalidity Contentions provides no

9    explanation at all of the *why* of obviousness, Patent Local Rule 3-3(b), *i.e.*, why a person of

10   ordinary skill in the art would be motivated to combine one reference with another.  To assert that

11   each element of a claim was found somewhere in a vast array of references says nothing about the

12   relationships among the references.  The party challenging the validity of the claim must also

13   prove a motivation to combine the particular references to reach the invention.  *KSR*, 550 U.S. at

14   417-19; *Power–One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1352 (Fed. Cir. 2010)

15   (challenger must provide a "plausible rational[e] as to why the prior art references would have

16   worked together").  Apple's silence on this point throughout its contentions means that Rule 3-

17   3(b)'s requirement of "an explanation of why the prior art renders the asserted claim obvious" is

18   wholly unmet.  *See, e.g.*, *Sick A.G.*, 2007 WL 1223675 at *2 (ordering defendant to "explicitly

19   identify" its obviousness combinations and the corresponding motivation to combine).  Worse,

20   the failure to identify specific combinations of references compounds this default because

21   Apple's obviousness theories cannot even be guessed at (though to be clear, THX is not required

22   to engage in such conjecture; Apple is required to disclose its theories).

23        The only exceptions to the foregoing are two of the obviousness combinations identified

24   as "Illustrative Obviousness Combinations" in Apple's Amended Invalidity Contentions Cover

25   Pleading.  (Halpern Decl., Ex. 11 at 114-24.)  Obviousness combinations A (Tomonori or

26   Kobayashi in combination with Sadaie or Onkyo GXW-5.1 and/or the knowledge of one of

27   ordinary skill in the art (*id.* at 115-17)) and F (Harris in combination with Tomonori, Sadaie, or

28   Onkyo GXW-5.1, and/or the knowledge of one of ordinary skill in the art (*id.* at 122-23)) appear

1   to be adequately disclosed as theories of obviousness, with the following caveats:  Neither

2   Kobayashi nor Harris was properly charted as a principal reference for the reasons discussed

3   above (*see supra* at 6-9, 15), and therefore, (i) Kobayashi should be stricken from combination A,

4   and (ii) combination F should be stricken entirely if the Harris chart is found inadequate because

5   Harris is the base reference.  If Harris survives this motion, then (iii) the Onkyo GXW-5.1

6   supporting reference should be stricken from combination F in any case because the charts repeat

7   the same blocks of material over and over and do not show visually or textually where the claim

8   limitations are allegedly found in the device.  (*See* Dkt. No. 89, Unredacted Ex. 3, Unredacted Ex.

9   4 (charts I-Y, II-Y).)

10          The remaining obviousness combinations do not satisfy Patent Local Rule 3-3(b) and

11   should be stricken altogether.  Obviousness combinations B and C (AAICCP, Halpern Decl., Ex.

12   11 at 117-18) are non-compliant with Rule 3-3(c) because both use the Nokia mobile phones as

13   the base reference and rely on the charts for those phones, which suffer from the same defects as

14   the Nokia 3361 chart—they consist of general product literature and unlabeled images that do not

15   indicate which components of the prior art are alleged to correspond to each claim limitation.

16   (Charts I-I, I-J, I-K, I-L, I-M, II-I, II-J, II-K, II-L, II-M, Halpern Decl. Exs. 12, 5, 23, 24, 25, 17,

17   13, 14, 15, 16.)  Obviousness combinations D, E, and G are non-compliant for similar reasons—

18   their base references are the TIC Outdoor Omni 360° Speaker models, the Advent Wireless

19   Indoor/Outdoor Speaker AW810, and the Anderson patent.  (AAICCP, Halpern Decl., Ex. 11 at

20   119-22, 123-24.)  The TIC and Advent products were improperly charted in the same fashion as

21   the Nokia charts (*see* charts I-A, II-A, I-R, II-R, Halpern Decl. Exs. 18-21), while the defects in

22   the Anderson chart are discussed above.  (*See supra* at 6-9.)

23          **C.      THX IS PREJUDICED BY APPLE'S FAILURE TO PROVIDE**
            **ADEQUATE INVALIDITY CONTENTIONS**
24

25          Apple's failure to fully disclose its invalidity theories has clearly prejudiced THX by

26   leaving THX in the dark as to what those theories may be.  This in itself is prejudicial to THX.

27   The requirement that charts must "identify[] where specifically in each alleged item of prior art

28   each limitation of each asserted claim is found" ensures full, early disclosure of defendant's

1    invalidity arguments and allows plaintiff a fair opportunity to respond. *MediaTek Inc. v.*

2    *Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb.

3    21, 2014) ("The rules are designed to require parties to crystallize their theories of the case early

4    in the litigation and to adhere to those theories once they have been disclosed.  Any invalidity

5    theories not disclosed pursuant to Local Rule 3–3 are barred, accordingly, from presentation at

6    trial …") (citation and quotation marks omitted); *MyMedicalRecords, Inc. v. Walgreen Co.*, No.

7    2:13-CV-00631-ODW, 2013 WL 6834639, at *4 (C.D. Cal. Dec. 23, 2013) (denying amendment

8    of invalidity charts to include new citations to references previously disclosed because  prior

9    "notice of the prior-art references … is not sufficient under Patent Local Rule 3–3(c) with respect

10   to the 46 new citations [as defendant's earlier Rule 3-3 disclosures] did not specifically identify

11   where each alleged limitation of each asserted claim is found in the prior-art citations.").

12   Compliance with Rule 3-3(c) is a minimum prerequisite to any amendment as failure to comply is

13   intrinsically prejudicial to plaintiff's ability to prepare its case.

14            More particularly, the Patent Local Rules require disclosure of invalidity positions prior to

15   *Markman* briefing so that, as with infringement, both parties are able to take invalidity issues into

16   account in developing their claim constructions.  Because Apple refused to provide fair disclosure

17   of its invalidity theories, THX was deprived of the benefit the Local Rules are designed to afford

18   equally to litigants.  For this reason, this and other courts recognized that changes to plaintiff's

19   invalidity theories made after parties have formulated their *Markman* claim construction positions

20   are prejudicial to plaintiff.  *See West v. Jewelry Innovations, Inc.*, No. C 07-1812 JF, 2008

21   WL4532558, at *4 (N.D. Cal. Oct. 8, 2008) (Court "particularly reluctant" to grant motion to

22   amend invalidity contentions post-*Markman* process where argument for amendment is based on

23   defendant's failure to identify the reference earlier); *Allure Energy, Inc. v. Nest Labs, Inc.*, 84 F.

24   Supp. 3d 538, 541-42 (E.D. Tex. 2015) (disallowing amendment to add prior art to invalidity

25   contentions under Patent Local Rules similar to those of the Northern District of California on

26   basis that "delay in correcting the Invalidity Contentions until all crucial pre-*Markman* deadlines

27   had passed" is unfair prejudice).  Like the plaintiff in *Allure Energy*, THX had to identify claim

28   terms for construction, advance proposed constructions and prepare its opening claim

1    construction brief before Apple sought to make its new amendments.  THX will be prejudiced by

2    its inability to raise construction issues informed by or relevant to the new material and Apple

3    should, therefore, not be permitted leave to amend its invalidity contentions.

4    **III.     CONCLUSION**

5            Apple's Rule 3-3 disclosures impermissibly obfuscate its invalidity theories.  Despite

6    being pressed by THX on the inadequacy of its contentions, Apple has refused to amend to

7    explain the bases of its allegations and to bring the contentions into compliance with the Patent

8    Local Rules.  Due to Apple's failure to specifically identify where in the prior art the claim

9    limitations are allegedly found or any specific obviousness combinations or theories, the

10   following portions of Apple's invalidity disclosures should be stricken: (i) the invalidity charts

11   lettered I-A through I-N, I-P through I-S, I-U through I-X, II-A through II-N, II-P through II-S,

12   and II-U through II-X, (ii) obviousness combinations B, C, D, E, F and G in Apple's Amended

13   Invalidity Contentions Cover Pleading, (iii) obviousness combination A to the extent it relies on

14   the Kobayashi reference, and (iv) the uncharted references cited in Apple's Amended Invalidity

15   Contentions Cover Pleading.

16   DATED:  August 8, 2016

17                                                      By:   _____*/s/ Eric L. Wesenberg*_____
                                                             Eric L. Wesenberg
18
                                                      Attorneys for Plaintiff
19                                                    THX LTD.

20

21

22

23

24

25

26

27

28

1

**<ins>CERTIFICATE OF SERVICE</ins>**

2

The undersigned hereby certifies that on August 8, 2016, a true and correct copy of the

3

foregoing was served on all interested parties via electronic mail pursuant to Civil Local Rule 5-

4

1(h).

5
                                                            */s/ Eric L. Wesenberg*

6
                                                            Eric L. Wesenberg

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28