UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THX, LTD., | Case No.  13-cv-01161-HSG |
| Plaintiff, | |
| v. | **CLAIM CONSTRUCTION ORDER** |
| APPLE, INC., | |
| Defendant. | |

On July 11, 2013, Plaintiff THX, Ltd. filed the currently operative first amended complaint against Defendant Apple, Inc., alleging infringement of two patents entitled "Narrow Profile Speaker Configurations and Systems":  (1) United States Patent No. 7,433,483 (the "'483 patent") and (2) United States Patent No. 8,457,340 (the "'340 patent") (together, "patents-in-suit").  Dkt. No. 12.  The parties seek construction of six terms found in the patents-in-suit.  This order follows claim construction briefing, a technology tutorial, and a claim construction hearing.

## I.   LEGAL STANDARD

Claim construction is a question of law to be determined by the Court.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).  "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (internal quotation marks omitted).

Generally, claim terms should be given their ordinary and customary meaning — i.e., the meaning that the terms would have to a person of ordinary skill in the art at the time of the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc).  There are only two circumstances where a claim is not entitled to its plain and ordinary meaning:  "1) when a

United States District Court
Northern District of California

patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

When construing claim terms, the Federal Circuit emphasizes the importance of intrinsic evidence such as the language of the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312-17. The claim language can "provide substantial guidance as to the meaning of particular claim terms," both through the context in which the claim terms are used and by considering other claims in the same patent. *Id*. at 1314. The specification is likewise a crucial source of information. Although it is improper to read limitations from the specification into the claims, the specification is "the single best guide to the meaning of a disputed term." *Id*. at 1315 ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive.") (internal quotation marks omitted); *see also Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) ("[C]laims must be construed so as to be consistent with the specification.").

Courts may also consider extrinsic evidence — technical dictionaries, learned treatises, expert and inventor testimony, and the like — to help construe the claims. *Phillips*, 415 F.3d at 1317–18. For example, dictionaries may reveal what the ordinary and customary meaning of a term would have been to a person of ordinary skill in the art at the time of the invention. *Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.,* 744 F.3d 715, 722 (Fed. Cir. 2014) ("Terms generally carry their ordinary and customary meaning in the relevant field at the relevant time, as shown by reliable sources such as dictionaries, but they always must be understood in the context of the whole document—in particular, the specification (along with the prosecution history, if pertinent).") Extrinsic evidence is, however, "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips,* 415 F.3d at 1317 (internal quotation marks omitted).

## II.   DISCUSSION

### A.   Agreed Terms

The parties have agreed to the construction of the following terms:

| Claim Term | Agreed Construction |
|---|---|
| "sound damping material" ('483 and '340 patents) | "material that absorbs sound waves in an audible frequency range" |
| "acoustically isolating" ('483 and '340 patents) | "acoustically separating" |
| "drive unit's forward radiation is isolated from its rearward radiation" ('483 patent) | "drive unit's forward radiation is acoustically separated from its rearward radiation" |
| "sound reflecting surface" ('483 and '340 patents) | "a non-resonant surface with low sound absorption, not made of sound damping material"[1] |

*See* Dkt. Nos. 58 at 1, 84 at 15-16.  In light of the parties' agreement on the construction of these terms, the Court adopts the parties' constructions.

**B.    Disputed Terms**

The patents-in-suit, entitled "Narrow Profile Speaker Configurations and Systems," describe "[a] narrow profile speaker unit" comprised of "at least one speaker outputting sound towards an internal surface and through a duct with an output terminus, such as a slot, having a narrow dimension, effectively changing the cross-section of the speaker's audio output wave." '483 patent at 1; '340 patent at 1.  The purpose of the described inventions is, at least in part, "[h]igh-quality stereo reproduction" and the provision of "a uniform sound field" in "environments that have physical constraints, limits of size, [and/or] limits of speakers."  *See* Hr'g Tr. at 8:1-9; *see also* '483 patent at 1:20-3:37; '340 patent 1:26-3:46.  Because the patents-in-suit are continuations, but for "some minor changes," "the specification is identical" across the '483 and '340 patents.  *See* Hr'g Tr. at 7:8-12.

The Court will address each of the six disputed terms in turn.

---

[1] The parties stipulated to this construction on the record at the May 25, 2016, claim construction hearing.  *See* Dkt. No. 122 ("Hr'g Tr.") at 79:19-80-21.

1

United States District Court
Northern District of California

### i.   "straight path"

| THX's Construction | Apple's Construction |
|---|---|
| "a sound path along which the sound waves are turned and travel to an output slot, without curves, bends or angles" | "a sound duct, within which sound waves are turned and travel to an output, without curves, bends, or angles" |

"Straight path" appears in claims 1-3, 4-6, 8, 10-11, 16, 18-21, 24, 27-29, and 31-32 of the '483 patent and claims 1-6 and 29-34 of the '340 patent.  Claim 1 of the '483 patent and claim 1 of the '340 patent are representative of how the term is used in the claim language:

   1.   A narrow profile sound system, comprising:

      a drive unit disposed on a mounting surface, said mounting surface forming a barrier acoustically isolating the drive unit's forward radiation from its rearward radiation;

      a sound reflecting surface facing the drive unit and substantially parallel with the mounting surface; and

      sound damping material disposed between said sound reflecting surface and the mounting surface, the sound reflecting surface and the mounting surface defining a bottom and top of a narrow sound duct terminating in an elongate output slot, with the sound damping material forming the sides of the sound duct, whereby forward radiation from the drive unit is turned at a substantially right angle and channeled along a **straight path** towards the output slot . . .

      '483 patent, claim 1 (emphasis added).

   1.   A narrow profile sound system, comprising:

      a drive unit disposed on a mounting surface, said mounting surface forming a barrier acoustically isolating the drive unit's forward radiation from its rearward radiation;

      a sound reflecting surface facing the drive unit; and

      a narrow sound duct terminating in an elongate output slot, the sound duct being defined by the sound reflective surface, the mounting surface, and an interior sidewall disposed between the sound reflecting surface and the mounting surface that follows a rear contoured edge of the drive unit opposite the sound duct, such that the sound duct provides a substantially **straight path** from the drive unit to the output slot…

      '340 patent, claim 1 (emphasis added).

THX asserts that "straight path" refers to the route that sound waves travel, while Apple

4

contends that "straight path" refers to the shape of the duct through which the sound waves travel.

In support of its construction, THX argues that there is no reason to interpret "path" to mean "duct" when the meaning of "path" is relatively clear.  Dkt. No. 74 ("THX Opening Br.") at 3.  Further, THX contends that it would be illogical to equate "path" and "duct," especially when the patent uses the words in the same clause.  *Id.* at 3-4.  For example, claim 1 of the '340 patent recites a speaker design in which "the sound ***duct*** provides a substantially ***straight path*** from the drive unit to the output slot."  '340 patent, 30:21-22 (emphasis added).  Similarly, claim 29 recites turning sound waves such that they are "channeled through the sound ***duct*** in a ***linear path*** directly towards the output slot."  *Id.* at 32:58-60.  THX points to Figure 10A of the '340 patent, where the word "path" is used to refer to the route that sound travels where there is no duct, as evidence supporting its interpretation.  THX Opening Br. at 4.

The crux of Apple's argument is that during inter partes review ("IPR") of the patents-in-suit, (1) the Patent Trial and Appeal Board ("PTAB") adopted Apple's proposed construction as the broadest reasonable construction and (2) in distinguishing Sadaie as prior art, THX "clearly disavowed any construction of 'straight path' that would cover a sound duct having bends, curves, or angles."  Dkt. No. 84 ("Apple Br.") at 4-8.  According to Apple, because PTAB held that "the broadest reasonable interpretation of 'straight path,' in the context of the '340 patent claims consistent with the specification, is 'a sound duct, within which sound waves are turned and travel to an output, without curves, bends, or angles," Dkt. No. 84-8, Ex. 4 at 9, THX's proposed construction is necessarily unreasonable.  Apple Br. at 6.  In addition, Apple argues that THX did not object to PTAB's construction and made the following unequivocal disavowals that a "path" can be distinct from a "duct":

> • "Sadaie teaches that the sound path 42 should be asymmetric so that any acoustic mass moving down the slot will have different distances to travel and the length of the sound path cannot be determined [], and that an acoustic mass moving down the path will be broken up because of the different distances that sound in different parts of the path must travel.  ***[Sadaie's] asymmetric dimensions . . . mean that the path contains curves and bends, and does not follow a 'straight path*.'"  Dkt. No. 84-5, Ex. 1 at 28-29 (emphasis added).

United States District Court
Northern District of California

- "[A]ll of Sadaie's embodiments include a sound path 42 that is **significantly narrower** than the sound source space 41, and often **the sound path itself also undergoes further narrowing at its mid-section**." *Id.* at 29 (emphasis added).

- "In light of Sadaie's teaching that the **sound path should be asymmetric**, this **does not constitute disclosure of a 'straight path.'**" *Id.* (emphasis added).

- "**Sadaie's sound path incorporates features that are explicitly designed to preclude a straight path**. First, Sadaie's **duct narrows substantially** from the sound source space 41 where the driver is located to the sound path 42. . . . This narrowing can be seen in Sadaie's figures, which show that **the width of the sound path at its narrowest ranges from between 50 to 25% of the total width of the driver in the sound source space. This means that there is no straight path to the exit for most of the generated sound**." Dkt. No. 84-6, Ex. 2 at 32-33 (emphasis added).

*See* Apple Br. at 5.

The Court finds that (1) the claim language and specification of the patents-in-suit support THX's construction and (2) THX did not unequivocally disavow its proposed construction during IPR proceedings.

The language of the '340 patent and figure 10A support ascribing distinct definitions to the terms "path" and "duct." While not conclusive, "[t]here is an inference . . . that two different terms used in a patent have different meanings." *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010); *see also Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (finding that "[i]f the terms 'pusher assembly' and 'pusher bar' described a single element, one would expect the claim to consistently refer to this element as *either* a 'pusher bar' or a 'pusher assembly,' but not both, especially not within the same clause."). The '340 patent not only uses both "path" and "duct," but juxtaposes the terms within the same clause in claim one. Consequently, the adoption of Apple's proposed construction that equates "path" and "duct" would result in claim one repetitively instructing that "the sound **duct** provides a substantially **straight duct** from the drive unit to the output slot." *See* '340, 30:21-22. Further, figure 10A of the patents-in-suit describes a sound "path" independent of any physical structure that could be considered a "duct," and it is thus unlikely that the inventor intended to define a "straight path" as a "straight duct." Based on the foregoing intrinsic evidence, the Court finds that

the inference that "path" and "duct" have different meanings is appropriate here.

The Court's conclusion is not changed by the prosecution history of the patents-in-suit. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). "The patentee is held to what he declares during the prosecution of his patent," *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007), but where the disavowal of a claim scope is ambiguous, the doctrine of prosecution disclaimers does not apply. *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1325 (Fed. Cir. 2015). Thus, for the doctrine of prosecution disclaimer to attach and "narrow[] the ordinary meaning of the claim congruent with the scope of surrender," the patentee must have "unequivocally disavowed a certain meaning to obtain his patent." *Id.*

During the IPR proceedings, THX arguably used the terms "duct" and "path" interchangeably. *See e.g.*, Dkt. No. 84-5, Ex. 1 at 29 ("[A]ll of Sadaie's embodiments include a sound path 42 that is *significantly narrower* than the sound source space 41, and often *the sound path itself also undergoes further narrowing at its mid-section*.") (emphasis added); *id.* ("In light of Sadaie's teaching that the *sound path should be asymmetric*, this *does not constitute disclosure of a 'straight path.'"*) (emphasis added); Dkt. No. 84-6, Ex. 2 at 32-33 ("*Sadaie's sound path incorporates features that are explicitly designed to preclude a straight path*. First, Sadaie's *duct narrows substantially* from the sound source space 41 where the driver is located to the sound path 42. . . . This narrowing can be seen in Sadaie's figures, which show that *the width of the sound path at its narrowest ranges from between 50 to 25% of the total width of the driver in the sound source space.*) (emphasis added). However, while THX's language may not have been as precise as it could have been, none of the above statements "unequivocally disavowed" its current distinction between "path" and "duct." This is especially true when the distinction between "path" and "duct" was not presented to PTAB. *See* Dkt. No. 84-8. Because the Court finds no evidence that THX "unequivocally disavowed" its proposed construction, the doctrine of prosecution disclaimer does not apply. *See TomTom, Inc.*, 790 F.3d at 1325.

United States District Court
Northern District of California

Relatedly, the Court is unpersuaded by the argument that it should adopt Apple's proposed construction because it is consistent with PTAB's broadest reasonable construction. *See* Apple Br. at 4-8. As an initial matter, Apple conceded at the claim construction hearing that the Court is not bound by PTAB's construction. *See* Hr'g Tr. at 3:23-5:16; *cf. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2146 (2016) (recognizing that the "different evidentiary burdens" in IPR and district court proceedings "mean that the possibility of inconsistent results is inherent to Congress' regulatory design"). In addition, even if the Court were to consider PTAB's construction, the Court would ascribe limited persuasive authority to the PTAB decision because the dispute between "straight path" and "straight duct" was not presented. *See* Dkt. No. 84-8. Rather, PTAB considered whether Saidie discloses a "straight path," finding that Apple had not adequately explained "how Sadaie discloses a substantially straight path in light of (1) Sadaie's textual description of sound path 42 as having an asymmetrical or curved shape and (2) Sadaie's figures illustrating paths that are asymmetrical or narrow . . . ." *Id.* at 15-16. Completely absent from PTAB's opinion is any construction of "straight path" outside of the context of Saidie.

Thus, consistent with the intrinsic evidence, the Court construes "straight path" as "a sound path along which the sound waves are turned and travel to an output slot, without curves, bends or angles."

**ii.   "narrow sound duct"**

| THX's Construction | Apple's Construction |
| --- | --- |
| "a duct that is narrow in relation to the wavelength of the sound to be reproduced" | Plain and ordinary meaning; no construction necessary.<br><br>Alternatively, "a sound duct that has a width that is greater than its height" |

"Narrow sound duct" appears in claim 1 of the '483 patent and claims 1 and 29 of the '340 patent. Claims 2-3 of the '483 patent and claims 2-6 and 30-34 of the '340 patent are dependent

on the independent claims.  Claim 1 of the '340 patent is representative of how the term is used in

the claim language:

> 1.   A narrow profile sound system, comprising:
>
>> a drive unit disposed on a mounting surface, said mounting surface forming a barrier acoustically isolating the drive unit's forward radiation from its rearward radiation;
>>
>> a sound reflecting surface facing the drive unit; and
>>
>> a **narrow sound duct** terminating in an elongate output slot, the sound duct being defined by the sound reflective surface, the mounting surface, and an interior sidewall disposed between the sound reflecting surface and the mounting surface that follows a rear contoured edge of the drive unit opposite the sound duct, such that the sound duct provides a substantially straight path from the drive unit to the output slot . . .
>
>> '340 patent, claim 1 (emphasis added).

THX contends that the term "narrow sound duct" must be construed in relation to the

audible sounds to be reproduced, whereas Apple argues that the term should be ascribed its plain

and ordinary meaning.  Alternatively, Apple proposes that "narrow sound duct" be defined as any

sound duct "that has a width that is greater than its height."

In support of its argument, THX first asserts that in several dependent claims, it is clear

that "narrow" describes the dimension perpendicular to the driver.  THX Opening Br. at 7 (citing

'340 patent, claims 5, 16, 27, 33, 44).  Those dependent claims recite "a sound duct . . .

sufficiently narrow such that an interfering phase shift is avoided between direct and reflecting

sound waves output by the drive unit."  '340 patent, claims 5, 16, 27, 33, 44.  In order to be

"sufficiently narrow such that an interfering phase shift is avoided," THX argues that the distance

between the speaker face and the sound reflecting surface must be small in view of the frequencies

of sound to be reproduced.  *Id.*  According to THX, while the language above appears in

dependent claims that further restrict the degree of narrowness, "narrow" should be construed

consistently across all claims.  Second, THX argues that its construction finds support in the

patents' goals of "conveying sound waves through the duct with high quality and minimal

distortion."  *Id.* at 8.  According to THX, in order to preserve sound quality, the duct must be

United States District Court
Northern District of California

narrow in an absolute sense such that it is too short "for standing waves to form . . . and produce unwanted coloration of the frequency response." *Id.*    Finally, THX argues that using a short duct height to prevent resonances comports with the patents' teachings to place sound damping material on the side and rear walls of the duct to prevent resonances. *Id.* at 9.  THX asserts that the lack of sound damping material on the top or bottom of the duct implies that vertical resonances will not arise due to the narrow nature of the duct.  *Id.*

Apple makes three main arguments in support of its "plain and ordinary meaning" construction:  (1) dependent claims that further limit the invention to ducts "sufficiently narrow" to avoid an interfering phase shift do not impart special meaning to "narrow sound duct" itself; (2) THX's construction would require the Court to interpret "narrow" differently here than in other claims such as "narrow profile sound system" ('483 patent claim 1) and "wherein sound emanating from the sound output aperture is characterized by a wide horizontal dispersion angle and a narrow vertical dispersion angle as a result of the elongate shape of the sound output aperture" ('483 patent claim 8); and (3) neither the intrinsic evidence nor knowledge of one skilled in the art provides a standard by which to judge whether a duct is "narrow" "in relation to" the wavelength of the sound because there is no single "wavelength of the sound" in any embodiment. Apple Br. at 9-10.

The Court holds that the specification of the patents-in-suit implies that THX's construction of "narrow sound duct" is correct.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.").  The specification discloses that the patents-in-suit are directed to "sound reproduction" in environments that may limit the "number, size, quality, characteristics, and arrangement of speakers." '483 patent at 1:30-33.  In line with this goal, the preferred embodiments describe a speaker in which "the sound reflecting surface is spaced at a distance from the front face of the speaker such that the duct or chamber defined by the surrounding sidewalls and backwall does not permit soundwaves of the primary acoustic output from the speaker to unfold significantly within the confines of the duct," which causes the soundwaves emitted from the output slot "to have sound quality and dynamic range

10

United States District Court
Northern District of California

comparable to the soundwaves initially emitted from the speaker itself." '483 patent at 6:18-27.

Consistent with THX's construction, a "sound duct" that is "narrow in relation to the wavelength

of the sound to be reproduced" prevents unfolding and reproduces high-quality sound as

described. *See* Dkt. No. 75 ("Elliott Decl.") ¶ 53. Similarly, the patents-in-suit repeatedly

disclose the use of sound damping material on the side and rear walls, but not on the top and

bottom of the duct, to prevent unwanted resonances. *See e.g.*, '483 patent at 8:45-60, 10:60-65,

20:59-64, 25:26-30; *see also* '483 patent at 8:17-28, 8:52-55, 23:11-21. The absence of sound

damping material on the top and bottom of the duct is consistent with the ultimate goal of

reproducing high quality sound if the duct is "sufficiently narrow that the vertically oriented

higher order waves cannot propagate." *See* Elliott Decl. ¶ 54. Accordingly, the Court finds that

the goal disclosed by the specification requires that "narrow sound duct" be understood in the

context of the soundwaves to be reproduced.

The Court is unpersuaded by Apple's arguments to the contrary. First, although dependent

claim 5 of the '340 patent recites "a sound duct sufficiently narrow such that an interfering phase

shift is avoided," a duct that avoids an interfering phase shift must be even narrower than a duct

that is narrow in relation to the wavelength to be reproduced. *See* Hr'g. Tr. at 51:2-54:16. Thus,

dependent claim 5 of the '340 patent is not duplicative of THX's proposed construction. In

addition, for the reasons articulated above, the specification makes clear that "narrow sound duct"

must be construed in light of the goal of the patents-in-suit, even if it requires "narrow" to assume

different meanings at different points in the claims. *See Fin Control Sytems Pty, Ltd. v. OAM,*

*Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001) ("[T]he same terms appearing in different portions of

the claims should be given the same meaning unless it is clear from the specification and

prosecution history that the terms have different meanings at different portions of the claims.").

Finally, the Court finds Apple's proposed alternative construction of "narrow sound duct"

as "a sound duct that has a width that is greater than its height" untenable. THX correctly points

out that "Apple's proposal would define a duct as narrow even if it is almost a perfect square with

a minimally greater width than height." THX Opening Br. at 11. The Court finds this

construction of "narrow sound duct" unsupported and inconsistent with even the plain and

ordinary meaning of the term.

As such, the Court construes "narrow sound duct" as "a duct that is narrow in relation to the wavelength of the sound to be reproduced."

### iii.    "sound damping material" terms

There are several "sound damping material" terms that the parties dispute:  (1) "sound damping material [forming/forms] sides of the sound duct" ('483 patent); (2) "sound damping material [forms/forming] an outer shape of the sound duct" ('483 patent); (3) "sound damping material forms a back wall of the sound duct" ('483 patent); (4) "said interior sidewall comprises sound damping material" ('340 patent); (5) "said interior sidewall is comprised of sound damping material along the entire interior periphery of the sound duct" ('340 patent).

| THX's Construction | Apple's Construction |
|---|---|
| Agreed meaning for "sound damping material," i.e., "material that absorbs sound waves in an audible frequency range."<br><br>The remainder of these phrases should be construed according to their plain meaning. | The parties agree that the terms require material that absorbs sound waves in an audio frequency range.<br><br>The terms also require that the material that absorbs sound waves in an audible frequency range is added to the walls of the sound duct. |

These "sound damping material" terms appear in claims 1, 18, 31, and 32 of the '483 patent.  Claims 2-3, 19-20, 24, and 27-29 of the '483 patent are dependent of those claims.  The terms also appear in claims 3, 4, and 31 of the '340 patent.  Claims 5-6, 8, 10, 11, 16, and 32 of the '340 patent are dependent of those claims.  These phrases provide examples of the varying ways in which the patents-in-suit use the terms.

The parties agree that "sound damping material" means "material that absorbs sound waves in an audible frequency range."  Dkt. No. 58 ("Joint Claim Construction Statement") at 1.  However, THX asserts that the phrases following "sound damping material" — "forming/forms" or "comprising/is comprised of" — should be construed according to their plain meaning.  THX Opening Br. at 11-12.  In contrast, Apple contends that the phrases "forming/forms" or "comprising/is comprised of" require that the sound damping material be *added to* the walls of the

United States District Court
Northern District of California

sound duct as opposed to the walls potentially being *made of* sound damping material.  Apple Br. at 10-13.

THX argues that there is no evidence that "forming/forms" or "comprising/is comprised of" assumes a special meaning in the field of acoustics or in the patents-in-suit.  THX Opening Br. at 11-12.  Additionally, THX argues that "it is well settled that 'comprises' or 'is comprised of' means 'including but not limited to' and covers a structure containing whatever follows 'comprises/is comprised of,' regardless of whether the structure has additional components."  *Id.* at 12 (citing *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007)).  According to THX, the specification discloses the use of sound damping material alone to form the sides of the duct in several places.  *Id.* at 12 (citing '483 patent at 20:55-57) ("[S]ound damping material 1912 is extended to the front 1932 of the speaker mounting structure 1901, thereby forming sound ducts 1959, 1960 associated with each of the two speakers 1914, 1915.").

Apple articulates four reasons why the patents' use of "sound damping material" requires that the material be added to the walls of the sound ducts:  (1) the specification repeatedly distinguishes between "sound damping material" and the duct walls; (2) THX argued during IPR proceedings that the '483 patent "teaches placing sound damping material on the side walls of the duct," Dkt. 84011, Ex. 7 at 28; (3) the specification never discloses a wall made of sound damping material, and it would be unworkable to construct a duct using only sound damping material; and (4) THX's specification citations all support Apple's construction that requires sound damping material to be added to the duct walls.  Apple Br. at 11-13.

The Court finds that the intrinsic evidence supports THX's position, and thus holds that the "sound damping material" terms do not require construction.  While the specification is "the single best guide to the meaning of a disputed term," it is improper to read limitations from the specification into the claims.  *See Phillips*, 415 F.3d at 1315; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (noting that the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.").

Each of THX's citations to the specification is, at a minimum, consistent with sound

13

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

damping material forming or comprising a structure independent of a duct wall. *See e.g.*, '483 patent at 10:60-65 ("sound-damping material such as compressed foam surrounds the rear contours of the speaker . . . so as to define the sound duct"), 20:59-64 ("two sides of the sound duct being defined by the edge of the sound-damping material"), 21:35-39 ("the sound damping material is tapered towards the front of the speaker mounting structure, thereby forming sound ducts"), 22:17-21 ("Rigid side panels, or alternatively struts or other rigid members along the sidewall regions and/or, if desired, within the sound-damping material, may optionally be provided for mechanical support.").  For example, the specification's description of sound damping material "forming sound ducts" implies that the damping material itself can serve independently as one or more sound duct walls. *See id.* at 21:35-39.  Apple's argument that nothing in the specification explicitly discloses a wall made of sound-damping material would require the Court to limit the patents-in-suit to the described embodiments in a manner not permitted by Federal Circuit precedent. *See Liebel-Flarsheim*, 358 F.3d at 906.  Moreover, THX's representations during IPR proceedings that the '483 patent "teaches placing sound damping materials on the side walls of the duct" do not amount to an "unambiguous disavowal" of a duct whose walls are formed solely by sound damping material. *See TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1325 (Fed. Cir. 2015).  This is especially true when the distinction between "forming" and "adding" was not at issue in the IPR proceedings. *See* Dkt. No. 88 ("THX Reply Br.") at 7.

Thus, consistent with the intrinsic evidence, the Court holds that the phrases "forming/forms" or "comprising/is comprised of" do not require construction and should be ascribed their plain and ordinary meaning.

#### iv.   "groundplane audio speaker system"

| THX's Construction | Apple's Construction |
|---|---|
| "audio speaker system with a drive unit that can be configured to face a groundplane, that is, a flat reflecting surface narrowly separated from the origin of a direct sound wave"<br><br>Plaintiff offers a construction of this language because Defendant identified it as requiring construction. The language is drawn from the preamble of the claims. Plaintiff does not believe that it is a limitation affecting the scope of the patent claim or that devices must be demonstrated to be "groundplane audio speaker systems" in order to infringe a claim. | "audio speaker system in which the drive unit is configured to face a groundplane" |

"Groundplane audio speaker system" appears in claims 4, 18, 21, and 31 of the '483 patent and all claims dependent upon those claims.  Claim 4 of the '483 patent is representative of the way in which this term is used:

> 4.  A narrow-profile **groundplane audio speaker system**, comprising,
>
> a speaker housing;
>
> a first drive unit disposed within said speaker housing, said first drive unit mounted on a baffle whereby the drive unit's forward radiation is isolated from its rearward radiation; and
>
> one or more support members separating said first drive unit from a first sound reflective surface facing said first drive unit;
>
> wherein the baffle and the first sound reflecting surface define a sound duct terminating in a first sound output aperture proximate an outer edge of said first drive unit;
>
> whereby forward radiation from said first drive unit is substantially unimpeded in the direction of the first sound reflecting surface, and is turned at a substantially right angle and travels along a straight path to exit the first sound output aperture; and
>
> wherein said first sound output aperture is sufficiently narrow such that an interfering phase shift is avoided between the direct and reflecting sound waves output from said first drive unit.

'483 Patent, claim 4 (emphasis added).

The parties dispute three issues with respect to "groundplane audio speaker system":  (1)

whether the presence of "groundplane audio speaker system" in the preamble is limiting; (2) if it is limiting, whether the speaker must be configured to face a groundplane or optionally can be configured to face the groundplane; and (3) whether the "reflecting surface" can be the "groundplane." *See* Apple Br. at 16.

### a.   Whether "Groundplane" is Limiting

THX argues that "groundplane" is not limiting because (i) "the preamble does not recite structure essential to the claims" and (ii) the patent owner did not rely on the preamble to distinguish prior art. THX Opening Br. at 17-18. THX asserts that independent claims 21 and 31 of the '483 patent recite being configured to face a flat surface, and thus treating "groundplane" in the preamble as limiting would be redundant. *Id.* at 18. Similarly, THX argues that it would be illogical to treat "groundplane" as limiting when the '483 patent's independent claims (e.g., claim 4) do not recite the speaker system being configured to face a flat surface but contain dependent claims that impose such a limitation (e.g., claim 11). *Id.* Finally, THX contends that it did not rely on "groundplane" to differentiate prior art during IPR proceedings, but instead used the term as shorthand to refer to other features explicit in the claim body. *Id.*

Apple argues that each of the '483 patent's independent claims recites either a "narrow profile sound system" (claim 1) or a "narrow-profile groundplane audio speaker system" (claims 4, 18, 21, 31), and thus, "groundplane" is limiting because it recites an essential structure and is necessary to give meaning to the claims. Apple Br. at 16. According to Apple, but for the limitation of "groundplane" in claim 18 of the '483 patent, the speaker is identical to the "narrow profile speaker" recited in claim 1 of the '483 patent. Additionally, Apple asserts that during IPR proceedings, THX (1) attempted to add the application of the claims to "a novel groundplane speaker system" and (2) relied upon "groundplane" as an essential distinguishing structure from the Phillips speaker. *Id.* at 17-18.

"Whether to treat a preamble term as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010) (internal quotations and citations omitted). In general, "the preamble does not limit the claims" unless "it recites essential structure

or steps or if it is necessary to give life, meaning, and vitality to the claim." *Id.* A preamble is not limiting "when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002). A preamble that is "reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a rejection)" is not a separate limitation because "in general, the purpose of a claim preamble is to give context for what is being described in the body of the claim." *Symantec Corp. v. Computer Associates Int'l, Inc.*, 522 F.3d 1279, 1288-89 (Fed. Cir. 2008). However, "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." *Catalina*, 289 F.3d at 808.

The Court finds that during IPR proceedings, THX explicitly relied on "groundplane" to distinguish the Phillips '170 patent, and thus "groundplane" is a limiting term. *See Gillespie*, 501 F.3d at 1291 ("The patentee is held to what he declares during the prosecution of his patent.").

As an initial matter, independent claims 21 and 31 of the '483 patent describe a speaker housing "adapted to rest stably on a flat surface such that said drive unit faces towards the flat surface." *See e.g.*, '483 patent at 32:17-19, 32:60-62. Accordingly, the preamble's recitation of a "groundplane audio speaker system" is entirely duplicative of the independent claims, counseling against finding that the preamble is a limitation. *See Catalina*, 289 F.3d at 809 (stating that a preamble is not limiting "when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention").

However, during IPR proceedings, THX explicitly argued that "[u]nlike the invention of claim 4, Phillips '170 is not directed to a groundplane speaker at all, but rather to a wall-mounted speaker with substantially different intended sound attributes." *See* Dkt. No. 74-4 at 15. Thus, according to THX, Phillips "does not face a groundplane, but rather faces away from the wall on which the speaker is mounted, and therefore would not have the same benefits as a groundplane

speaker." *Id.*  Although THX asserts that "groundplane" was being used as "shorthand to refer to other features explicit in the claim body," *see* THX Opening Br. at 18, the applicant then continued to list the features explicit in the claim body as additional bases for distinguishing Phillips.  *See* Dkt. No. 74-4 at 15-16 ("**Also**, the location of the drive unit 7 in Phillips '170 is in the center for large 'sound diffusion receptacle area 22' . . . .  **In addition**, the wall-mounted speaker in Phillips '170 includes a 'bass resonance chambers 21 . . . .") (emphasis added).  For these reasons, the Court holds that THX must be held to its representations during IPR proceedings and construes "groundplane audio speaker system" as a limiting term.  *See Gillespie*, 501 F.3d at 1291.

### b.  Whether the Speaker Must Be Configured to Face a Groundplane

Next, the parties dispute whether the audio speaker system taught by the '483 patent *must* be configured to face a groundplane or optionally *can be* configured to face a groundplane.  THX argues that the intrinsic evidence teaches that the speaker is "capable of being placed on the reflecting surface" but "in no way requires" the speaker to be placed on such a surface.  Hr'g Tr. at 91:11-19.  Apple argues that THX expressly disclaimed any speaker that is not configured to face a groundplane when it distinguished the Phillips speaker during IPR proceedings.  *Id.* at 95:1-9.

The Court finds that the intrinsic evidence supports a construction in which the speaker must be capable of facing a groundplane, but need not be configured to face a groundplane in all instances.  The patent's specification explicitly teaches that the groundplane speaker can be oriented to face directions other than at the applicable groundplane.  *See* '483 patent at 14:53-56 ("[T]he speaker unit may also be oriented in a different direction; for example, it may be oriented upwards with the speaker housing suitably shaped to provide a stable base surface.").  Given this unequivocal description of a preferred embodiment facing a direction other than towards the groundplane, the intrinsic evidence counsels against requiring the speaker to be configured to face a groundplane.  *See Phillips*, 415 F.3d at 1315 ("Usually, [the specification] is dispositive.").

The Court also holds that THX did not clearly and unambiguously disclaim speakers that do not face a groundplane during IPR proceedings.  *See TomTom, Inc.*, 790 F.3d at 1325 (holding that for the doctrine of prosecution disclaimer to apply, the patentee must have "unequivocally

18

disavowed a certain meaning to obtain his patent"). During IPR, THX distinguished Phillips '170 on the basis that it is a "wall-mounted speaker with substantially different intended sound attributes." Dkt. No. 74-4 at 15. Thus, THX argued that Phillips was distinguishable both because it does not face a groundplane and because it possesses "substantially different intended sound attributes." *Id.* The Court finds that nothing about THX's representation qualifies as an unequivocal disavowal of a speaker unit that possesses the same attributes as the groundplane speaker taught by the '483 patent, but is not configured to face a groundplane.

Accordingly, the Court holds that the "groundplane audio speaker system" must be capable of facing a groundplane, but optionally can be configured to face in a different direction.

### c.    Whether the "Reflecting Surface" Can Be the "Groundplane"

Finally, the parties appear to dispute whether the "groundplane" may be the interior "reflecting surface" that immediately faces the drive unit. *See* '483 patent at 30:31-33. Apple contends that the "groundplane" and the internal "reflecting surface" immediately facing the drive unit must be distinct, *see* Apple Br. at 19-10, whereas THX appears to argue that one surface can serve as both the "groundplane" and the "reflecting surface," *see* Hr'g Tr. at 102:5-104:19.

The Court holds that the intrinsic evidence mandates that the "groundplane" and the internal "reflecting surface" immediately facing the drive unit be construed as two distinct surfaces. As Apple argues, the asserted independent claims of the '483 patent recite a "sound reflecting surface," regardless of whether the referenced unit is labeled a "narrow profile" or a "narrow-profile groundplane" speaker system. *See* Apple Br. at 19. For example, independent claim one, which is not described as a "groundplane" unit, teaches "a sound reflecting surface facing the drive unit and substantially parallel with the mounting surface." *See* '483 patent at 29:66-67. Independent claim 21, which in contrast describes a groundplane system, similarly teaches "a substantially flat sound reflecting surface facing said drive unit," but separately describes a flat surface on which the entire unit rests. *See id.* at 32:5-9, 32:17-19. It would be illogical to conclude that the internal "sound reflecting surface" that is present in both non-groundplane and groundplane speakers alike somehow distinguishes the groundplane speaker unit. Rather, the distinction is the additional, external sound reflecting surface that the unit may rest

19

United States District Court
Northern District of California

upon.  The Court's conclusion is further supported by the specification, which makes clear that a unit "may be referred to as a ground plane speaker unit" because "it may be particularly advantageous for, e.g., improving the sound quality of loudspeakers intended to be placed on a table, desk or similar reflecting surface that is relatively large compared to the wavelength of the radiated sound." *See id.* at 13:21-25.  This reference in the specification clarifies that there is a relatively larger external reflecting surface — the groundplane — which is distinct from the sound reflecting surface internal to the speaker unit.

As such, the Court concludes that the intrinsic evidence supports a finding that the "groundplane" and the internal "sound reflecting surface" immediately facing the drive unit are distinct.

Given the Court's conclusions above, the Court construes "groundplane audio speaker system" as "audio speaker system with a drive unit that can be configured to face a groundplane, that is, a flat reflecting surface that is distinct from the internal reflecting surface immediately facing the drive unit."

v.    "substantially" / "substantial"[2]

| THX's Construction | Apple's Construction |
|---|---|
| Plain meaning | Indefinite |

Some variation of "substantial" or "substantially" appears in claims 1-6, 8, 10-11, 16, 18-21, 24, 27-29, and 31-32 of the '483 patent.[3]  Variations also appear in claims 1-6 and 29-34 of the '340 patent.  Claim 1 of the '483 patent is illustrative of how the terms are used:

1.    A narrow profile sound system, comprising:

a drive unit disposed on a mounting surface, said mounting surface

---

[2] Apple proposes the following "complete" terms: "substantially flat"; "substantially following a curved contour"; "substantially level"; "substantially parallel"; "substantially right angle"; "substantially straight path"; "substantially unimpeded."
[3] Although THX treats "sound output is increased without substantial loss in smoothness or evenness of response over audio frequency ranges" separately, the Court includes the term in its analysis of the other "substantially" terms.

20

forming a barrier acoustically isolating the drive unit's forward radiation from its rearward radiation;

a sound reflecting surface facing the drive unit and **substantially parallel** with the mounting surface; and

sound damping material disposed between said sound reflecting surface and the mounting surface, the sound reflecting surface and the mounting surface defining a bottom and top of a narrow sound duct terminating in an elongate output slot, with the sound damping material forming the sides of the sound duct, whereby forward radiation from the drive unit is turned at a **substantially right angle** and channeled along a straight path towards the output slot . . .

'483 Patent, claim 1 (emphasis added).

THX asserts that "substantially" can be ascribed its plain meaning, whereas Apple argues that the term is indefinite.

In support of its indefiniteness argument, Apple asserts that the intrinsic evidence provides no objective boundaries for defining the "substantially" terms and fails to teach how to measure such claims. *See* Apple Br. at 20-23. THX opposes, contending that "the patent specification provides a standard by which a person of ordinary skill can assess the scope of the limitation modified by 'substantial' or 'substantially.'" *See* THX Opening Br. at 21.

In order to survive an indefiniteness challenge, a patent's claims "viewed in light of the specification and prosecution history" must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir.), *cert. denied*, 136 S. Ct. 569 (2015). "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Id.* Definiteness is assessed from the perspective of someone skilled in the art at the time the patent was filed. *Id.* A defense of invalidity due to indefiniteness must be proven by clear and convincing evidence. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011). If intrinsic evidence provides "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine the scope of the claims, the claims are not indefinite" even though they use a descriptor such as "substantially" "without reference to a precise numerical measurement." *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010).

The Court holds that Apple has not established by clear and convincing evidence that each

United States District Court
Northern District of California

of the "substantially" terms is indefinite.  Dr. Elliott, on behalf of THX, has provided a context-specific analysis of each of the "substantially" terms to highlight the portions of the specification that inform a person of ordinary skill in the art regarding the scope of the invention with reasonable certainty.  *See* Elliott Decl. ¶¶ 73-98.  In response, Dr. Kyriakakis, on behalf of Apple, does not dispute that a person of ordinary skill in the art would be able to ascertain general guidelines for the "substantially" terms from the specification's design goals and examples.  *See generally* Dkt. No. 84-1 ("Kyriakakis Decl.") ¶¶ 93-104.  Rather, for each of the "substantially" terms, Dr. Kyriakakis maintains that the term is indefinite for failure to explicitly define variations that fall within the claim language.  *See generally id.*

For example, in reference to a "substantially flat sound reflecting surface," Dr. Elliott describes how the specification discloses design goals, pictures, and exemplars of "substantially flat" surfaces.  *See* Elliott Decl. ¶¶ 74-78.  He highlights portions of the specification that explicitly identify the ability "to influence the directivity of the sound waves toward the output slot or aperture and/or to reduce [sic] potentially interference" as an important design goal.  *See id.* (citing '483 patent at 3:32-36, 8:17-27, 20:29-33, 20:45-58, 22:64-23:3).  From the examples and the stated design goal, Dr. Elliott asserts that a person of ordinary skill in the art "would understand that the sound reflecting surface should be substantially flat because surfaces that are uneven will tend to scatter sound waves and promote, rather than limit, sound interference . . . ." *Id.* ¶ 75.  In other words, any design which deviates sufficiently from a completely flat surface such that it begins to promote sound interference will fall outside of the claim language.  Rather than dispute this rationale, Dr. Kyriakakis asserts that the patents-in-suit "do not identify what variation from 'flat' or 'parallel' would still achieve the purported design goals, while deviating from the configuration shown in the patent figures." *See* Kyriakakis Decl. ¶ 98.  However, the Federal Circuit does not require the identification of precise variations that fall within the claim language, holding that "reference to a precise numerical measurement" is unnecessary.  *See Enzo*, 599 F.3d at 1335.  Rather, some gray area may remain so long as a person of ordinary skill in the art can define the scope of the claims with reasonable certainty.  *See Nautilus*, 783 F.3d at 1378.

Dr. Kyriakakis's expert report continues this pattern of requiring specific examples

United States District Court
Northern District of California

United States District Court
Northern District of California

defining the outer limits of the claim language for each of the "substantially" terms despite the Federal Circuit's guidance that such precision is unnecessary.  *See Enzo*, 599 F.3d at 1335.  For this reason, the Court finds that Apple has failed to prove by clear and convincing evidence that a person of ordinary skill in the art would be unable to determine the scope of the "substantially" terms from the general guidelines and examples disclosed by the intrinsic evidence.  Accordingly, the Court holds that the "substantially" terms are not indefinite and should be ascribed their plain and ordinary meaning.  *See id.* (finding that "not interfering substantially" is not indefinite when the intrinsic evidence "provides a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine the scope of the claims").

      **vi.**    **"proximate"**

| THX's Construction | Apple's Construction |
| --- | --- |
| Plain meaning | Indefinite |

"Proximate" appears in claims 4 and 31 of the '483 patent.  Claims 5-6, 8, 10, 11, 16, and 32 are dependent on those claims.  Claim 4 of the '483 patent is representative of how the term is used:

> 4.  A narrow-profile groundplane audio speaker system, comprising,
>
> > a speaker housing;
> >
> > a first drive unit disposed within said speaker housing, said first drive unit mounted on a baffle whereby the drive unit's forward radiation is isolated from its rearward radiation; and
> >
> > one or more support members separating said first drive unit from a first sound reflective surface facing said first drive unit;
> >
> > wherein the baffle and the first sound reflecting surface define a sound duct terminating in a first sound output aperture **proximate** an outer edge of said first drive unit;
> >
> > whereby forward radiation from said first drive unit is substantially unimpeded in the direction of the first sound reflecting surface, and is turned at a substantially right angle and travels along a straight path to exit the first sound output aperture; and
> >
> > wherein said first sound output aperture is sufficiently narrow such that an interfering phase shift is avoided between the direct and reflecting sound waves output from said first drive unit.

‘483 Patent, claim 4 (emphasis added).

Apple contends that "proximate" is indefinite, whereas THX asserts that "proximate" can be given its plain and ordinary meaning.

In support of its indefiniteness argument, Apple asserts that the ‘483 patent's only use of "proximate" is in independent claims 4 and 31 themselves, and thus there is no indication of how one of ordinary skill in the art would measure proximity.  Apple Br. at 23-24.  Further, Apple argues that THX's plain meaning construction of "proximate" as "very near or close" contradicts Dr. Elliott's plain meaning definition as "near or close," thus underscoring the indefiniteness of the term.  *Id.* at 24-25.

To explain the use of "proximate" in claim 4, THX points to the portion of the specification that describes placing the speaker "as near to the output slot as possible" if the speaker handles "significant high frequency signal components."  *See* ‘483 patent at 24:25-27.  THX asserts that this language would inform a person of ordinary skill in the art to assess proximity in relation to the wavelength of the higher frequencies to be produced by the speaker system.  THX Opening Br. at 25.  With respect to claim 31, THX contends that "lengthwise proximate" is meant to minimize the phase differences with respect to direct and reflected waves.  THX Reply Br. at 15.  Finally, THX argues that Apple's expert, Dr. Vipperman, ascribed the ordinary meaning of "close" to "proximate" during IPR proceedings.  THX Opening Br. at 25.

The Court holds that Apple has not established by clear and convincing evidence the ‘483 patent's use of "proximate" is indefinite.  The term's plain and ordinary meaning governs, and no construction is necessary.  *See Phillips*, 415 F.3d at 1312 ("[T]he words of a claim are generally given their ordinary and customary meaning.").

### a.  Independent Claim 4

The ‘483 patent's specification provides sufficient guidance regarding its use of "proximate" in claim 4 such that one of ordinary skill in the art would be reasonably certain about the scope of the invention.  For example, the ‘483 patent includes several examples of speakers close, or "proximate," to the sound output aperture.  *See e.g.*, ‘483 patent, Figures 1, 2B, 3A-3C, 19A.  The specification provides further insight into the definition of "proximate" by teaching that

United States District Court
Northern District of California

24

United States District Court
Northern District of California

the "size and shape of the sound ducts" and sound damping material may need to be manipulated to avoid standing waves within the sound duct "in order to yield the optimal sound quality for a given type of speakers." *Id.* at 23:7-21. Specifically, if the speaker "is a tweeter or else handles significant high frequency signal components, it is generally desirable to place the speaker as near to the output slot as possible." *Id.* at 24:24-27. In the context of the '483 patent's goal of turning sound while maintaining "sound quality and dynamic range comparable to the soundwaves initially emitted from the speaker itself," '483 patent at 6:18-27, the above guidance plausibly instructs one of ordinary skill in the art that proximity should be assessed in "comparison with the wavelengths to be reproduced and the width of the speaker and duct." *See* Elliott Decl. ¶ 67. Accordingly, the Court finds that Apple has not shown by clear and convincing evidence that the '483 patent's use of "proximate" in claim 4 is indefinite. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).

### b.  Independent Claim 31

The '483 patent also adequately provides one of ordinary skill in the art reasonable certainty regarding the scope of "proximate" as used in claim 31. The specification teaches that "the radiating apertures defined by ducts are preferably close enough to the sound reflecting surface that an interfering phase shift between the direct and reflecting soundwaves is not induced." '483 patent at 14:41-44. According to the specification, placing the output apertures "close enough" to the sound reflecting surface avoids "comb filtering" or "a roughness or coloration to the perceived sound quality." *See id.* at 14:20-26. Independent claim 31's explicit goal of increasing sound output "without substantial loss in smoothness or evenness of response over audio frequency range," *see id.* at 33:8-11, makes clear that the goal of placing the sound output aperture "lengthwise proximate the flat surface" is the avoidance of comb filtering as described by the specification. Accordingly, the Court finds that the specification provides one skilled in the art reasonable certainty regarding how to place the sound output aperture "lengthwise proximate the flat surface" to avoid an interfering phase shift and thus achieve the goals of claim 31. Apple has thus failed to prove that the use of "proximate" in claim 31 is indefinite by clear and convincing evidence. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91,

25

95 (2011).

The Court finds that Apple has failed to prove that "proximate" is indefinite as used in the '483 patent, and that the term should be ascribed its plain and ordinary meaning. *See Phillips*, 415 F.3d at 1312 ("[T]he words of a claim are generally given their ordinary and customary meaning.").

## III. CONCLUSION

The Court construes the disputed terms as follows:

| Term | Patent(s) | Construction |
|---|---|---|
| "straight path" | '483 and '340 patents | "a sound path along which the sound waves are turned and travel to an output slot, without curves, bends or angles" |
| "narrow sound duct" | '483 and '340 patents | "a duct that is narrow in relation to the wavelength of the sound to be reproduced" |
| "sound damping material" terms | '483 and '340 patents | "sound damping material" means "material that absorbs sound waves in an audible frequency range"; <br><br> the remainder of the phrases do not require construction and should be ascribed their plain and ordinary meaning |
| "groundplane audio speaker system" | '483 patent | "audio speaker system with a drive unit that can be configured to face a groundplane, that is, a flat reflecting surface that is distinct from the internal reflecting surface immediately facing the drive unit" |
| "substantially" / "substantial" | '483 and '340 patents | No construction necessary; the terms shall be ascribed their plain and ordinary meaning |
| "proximate" | '483 patent | No construction necessary; the term shall be ascribed its plain and ordinary meaning |

United States District Court
Northern District of California

The Court sets a case management conference for November 29, 2016, at 2:00 p.m.  The parties are directed to meet and confer and file a joint case management statement by November 22, 2016.  In particular, the parties should discuss whether they agree on a proposed case schedule.

**IT IS SO ORDERED.**

Dated:  November 4, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge