UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLOT SPEAKER TECHNOLOGIES, INC., <br> Plaintiff, <br> v. <br> APPLE, INC., <br> Defendant. | Case No. 13-cv-01161-HSG <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 361 |

Pending before the Court is Defendant Apple, Inc.'s motion for summary judgment of non-infringement. Dkt. No. 361. For the reasons detailed below, the Court **GRANTS** the motion.

**I. BACKGROUND**

On July 11, 2013, Plaintiff Slot Speaker Technologies, Inc. ("SST") filed the currently operative first amended complaint against Defendant Apple, Inc. ("Apple"), alleging infringement of two patents entitled "Narrow Profile Speaker Configurations and Systems": (1) United States Patent No. 7,433,483 (the "'483 Patent") and (2) United States Patent No. 8,457,340 (the "'340 Patent") (together, "patents-in-suit"). Dkt. No. 12 ("FAC"). According to Plaintiff, Apple has been infringing (and continues to infringe) the patents by, inter alia, making and selling its products with "narrow-profile speaker units that output sound through a duct or aperture, having a narrow dimension." FAC ¶¶ 10, 14.

After Apple filed for *Inter Partes* Review ("IPR") of the patents-in-suit, the Court stayed this action from October 24, 2013, until June 22, 2015. Dkt. Nos. 35, 42. On November 4, 2016, the Court issued its claim construction order. Dkt. No. 206. In it, the Court construed several key terms, including, as relevant to the pending motions for summary judgment, "sound reflecting surface" and "straight path." *Id.* at 3–8. The Court construed the term "sound reflecting surface" using the parties' agreed-upon construction: "a non-resonant surface with low sound absorption,

not made of sound damping material." *Id.* at 3. SST proffered a construction that a "straight path" is "a sound path along which the sound waves are turned and travel to an output slot, without curves, bends or angles." *Id.* at 4. Apple, alternatively, proposed that a "straight path" is "a sound duct, within which sound waves are turned and travel to an output, without curves, bends, or angles." *Id.* The Court adopted SST's construction, reasoning that the '340 patent juxtaposes the terms "path" and "duct" such that these terms must have distinct meanings. *See id.* at 6–7.

## II. LEGAL STANDARD

A motion for summary judgment should be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party has the initial burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Id.* at 323.

If the moving party meets its initial burden, the burden shifts to the non-moving party to present facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324. The Court must view the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Summary judgment is not appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve the disputed issue of material fact in the nonmovant's favor. *Anderson*, 477 U.S. at 248. Nonetheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (internal quotation mark omitted).

Infringement is a question of fact. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004). The patent holder has the burden to prove that each accused product "includes every limitation of [an asserted] claim." *Dolly, Inc. v.*

*Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994). The Court can resolve the issue on summary judgment only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Frank's Casing Crew* 389 F.3d at 1376 (internal quotation mark omitted); *see TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002) ("[A]ll of the elements of the claim, as correctly construed, must be present in the accused system."). "Any deviation from the claim precludes" a finding of literal infringement. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001). The absence from the accused product of one limitation in the claim means that, as a matter of law, there is no literal infringement of that claim. *Frank's Casing Crew*, 389 F.3d at 1376.

## III. ANALYSIS

Apple moves for summary judgment, contending that SST cannot establish infringement. In particular, Apple argues that there is no dispute of material fact that the accused products do not have (1) a "straight path" or (2) a "sound reflecting surface," as required by the claims. The Court agrees.

### A. Straight Path

The asserted claims of the '483 patent require sound waves from the speaker drive unit to travel, after being turned, along a "straight path" to a sound output aperture or output slot. Apple contends that none of the accused products have a straight path because the sound paths contain curves, bends, and angles. For example, the sound duct of the iPhone 5 is depicted below in profile and from a top-down viewpoint:





Dkt. No. 362-10 at Ex. G-22, G19. Dr. Elliott used this duct shape as the model for his sound wave simulations, and contends that those simulation results are applicable to all other accused products. Dkt. No. 515 ("Elliott Rpt.") ¶ 389; Dkt. No. 391-5 ("Elliott Tr.") at 21:19–22:23; Dkt. No. 514 ("SST Opp. Mot.") at 14. An image of his simulation model is shown below:



Elliott Rpt. ¶ 389.

In particular, Apple contends that the sound ducts in the accused products significantly constrict and flare at various points, causing the sound waves to change direction. *See* Dkt. No. 361 ("Apple Mot.") at 14–15. This, in turn, affects the quality of the sound output. *Id.* at 16. Apple points out that the path that sound waves travel is influenced by the physical space (*i.e.*, the duct) in which they travel. *See* Apple Mot. at 14–16. Accordingly, Apple contends that the sound waves do not travel in a "straight" path because the walls of the duct are irregularly-shaped, resulting in a sound path that contains curves, bends or angles. *Id.* at 20-23; *see also* Dkt. No. 362-10, Ex. 6 ███████████████; Dkt. No. 362-20, Ex. 11 ███████████████ at APL-THX_0000044261.

SST does not appear to disagree that the duct walls of the infringing products are not straight. *See* SST Opp. Mot. at 19. Rather, SST emphasizes that the duct is not synonymous with the sound path, and suggests that "departure[s] from perfectly parallel walls" may still produce sound waves that follow a straight path. *Id.* In support, SST offers its expert's opinion that the accused products contain a "straight path," notwithstanding the configuration of the duct walls, because of the shape of the sound waves in the duct between the sound driver and the aperture. SST's expert Dr. Elliott describes a straight path as one in which the shape of the sound wavefronts is "planar," meaning the waves have equal pressure at each point of a given cross-section of the duct in which they travel. *See* SST Opp. Mot. at 14; Dkt. No. 354-15 ("Elliott Reply Rpt.") ¶¶ 115–117. He contrasts these planar waves with spherical and circular waves, which "contain curves, bends and angles in their wavefronts by definition." Elliott Reply Rpt. ¶ 118. He notes that a duct in which spherical and circular wavefronts develop does not provide a straight path. *Id.*

Dr. Elliott asserts that a speaker situated perpendicular to a rectangular duct generates "a plane wave further along the duct, in which the particle velocity is parallel to the duct." Elliott Rpt. ¶¶ 91, 108, 577–578. He then considers a sound path to be straight if the plane waves generated by the speaker are also planar when they reach the sound output, regardless of any

5

localized interference to the waves caused by the duct shape before the output. *See* Elliott Tr. at 58:3–20, 52:23–53:10; *see also* Dkt. No. 356 (Apple Mot. to Strike) at 12–13. He theorizes that minor deviations from planar in between the beginning and end of the path are irrelevant to the analysis, so long as those deviations do not have a material acoustic effect. *Id.*

Putting aside whether these theories were previously disclosed, the Court finds that they still do not establish a genuine issue of fact as to whether the infringing products contain a "straight path." Even Dr. Elliott's own testing results show curves in the pressure distribution throughout the duct, and at the output aperture. *See* Elliott Rpt. ¶¶ 388, 395–413; Elliott Tr. at 133:25–134:20. These curves preclude the sound path in the accused products from being a "path…without curves, bends or angles."

SST contends that under *SunTiger, Inc. v. Scientific Res. Funding Grp.*, 189 F. 3d 1327, 1336 (Fed. Cir. 1999), a specific portion of the sound path in the accused products may be isolated to find infringement. *See* SST Opp. Mot. at 20. The Court is not persuaded. *SunTiger* involved sunglasses that blocked visible sunlight. Part of the accused lenses contained infringing transmission rates, but other parts were affected by an additional element: a coating that altered the transmission rates such that those parts did not infringe. Here, in contrast, SST cannot point to a portion of the accused products that meets every limitation of an asserted claim. The sound waves emitted from the output aperture cannot be segregated into those that followed a straight path and those that did not, because to engage in that type of strategic box-drawing would vitiate the purported invention of the patent. *See* Elliott Rpt. ¶¶ 110-111 ("To ensure that the sound reaching the listener has comparable quality and dynamic range to the soundwaves when they leave the loudspeaker, another feature of the [invention of the patents-in-suit] is a sound duct geometry that channels the sound along a path that is generally straight, to avoid altering the soundwaves' acoustic properties."); *see also* Elliott Tr. at 79:20–80:17.

Moreover, *SunTiger* is inapposite because SST's current infringement theory requires the presence of planar waves in order to find a straight path. SST's expert Dr. Elliott admits that there are non-planar waves in portions of the sound path. Elliott Tr. at 134:14-20 ("[W]hen [the sound waves] go through the constriction associated with going from the part of the duct which is above the driver where the sound is turned to the part of the duct where the wave is transmitted to the output port, then within that transient region, as it's called here, then there are waves which deviate from being plane."). Dr. Elliott's simulation results depict this curvature in pressure distribution both at the point of constriction and at the output aperture, as shown below:



Plan view - Case 1: resonator based on measured iPhone 5 geometry, 2nd resonance frequency, acoustic pressure

Elliott Rpt. ¶ 395. As illustrated by Dr. Elliott's simulation results, the portions of the duct in which SST admits the sound waves are non-planar are not "additional elements" joined to the sound path. Rather, those portions are *within* the sound path. As such, even making all reasonable inferences in Plaintiff's favor, there is no sound path to the output that is straight under the agreed-upon construction of "straight path."

SST attempts to further distance itself from its own proffered—and adopted—construction of "straight path" by explaining that the variations in the walls of the duct and in the path of the sound waves are "very minor," and that the claims do not require "absolute straightness." *See* SST Opp. Mot. at 15–16. At the hearing on the motion for summary judgment, SST similarly reversed course to deemphasize its own definition of "straight path," which includes "without

7

curves, bends, or angles." SST acknowledged that "there's a curve in the pressure distribution. There's a very slight curve in the pressure distribution." Dkt. No. 431 at 66. However, SST stated that "there's a significant portion of the sound that's going straight out the duct." *Id.* at 68. SST asked the Court to focus on a specific subset of the sound path, looking only at the sound in the middle of the duct that will "proceed straight out." *Id.* at 69.

During the hearing, SST acknowledged that there may be curves, bends, or angles where the sound duct expands, but ignored this section, stating "there is still there a path for travel of sound that allows the sound to travel straight out. And some of the sound is traveling straight out." Dkt. No. 431 at 69. SST then attempted to explain the deviations by stating that "[n]o device is perfectly straight. No device has sound that travels perfectly along a straight path." *Id.* at 72. When the Court pressed SST to explain why it would agree to a construction of straight path that contained no "curves, bends, or angles," SST responded that "we were fighting the fight we were having, which is, are we arguing about the duct or the path." *Id.* at 82. The Court does not find this explanation sufficient to revise the definition of "straight path" at the summary judgment stage. If, as SST now posits, there is no true path without "curves, bends, or angles," then it should not have proposed this definition.

The Court finds that throughout the history of this case, SST has altered its definition of "straight path" to fit the needs of the moment. Before the PTAB in its IPR preliminary responses, SST argued that irregular duct shapes prevented the prior art from providing a straight path. SST argued that the prior art's "asymmetric dimensions . . . mean that the path contains curves and bends, and does not follow a 'straight' path." Dkt. No. 84-5 at 29. When describing and distinguishing the Sadaie embodiments, SST explained that "Sadaie's sound path incorporates features that are explicitly designed to preclude a straight path," including its ducts that "narrow[] substantially." Dkt. No. 84-6, Ex. 2 at 32–33. During claim construction, SST embraced the concept that the sound path included the entire volume defined by the duct: "In any event, the PTAB's analysis supports [SST]'s position, as it shows the Board understood the path as defined by the *entire duct volume*, not merely the perimeter." Dkt. No. 74 at 5–6 (emphasis added).

Now, SST proposes a definition in which "straight path" applies only to a portion of the

8

sound generated by the speakers. *See* Dkt. No. 428 at 1–2. This newly-proposed sound path is no longer defined by the entire duct volume, and is not necessarily impacted by asymmetric dimensions, or by narrowing or widening of the duct.

Notwithstanding SST's shape-shifting theories of "straight path," the Court finds that no reasonable jury could conclude based on the evidence presented that the accused products contain a straight path (as construed by the Court at the parties' urging). SST, therefore, cannot establish infringement.

### B. Sound Reflecting Surface

Prior to the Court's claim construction order, the parties agreed to construe "sound reflecting surface," found in each of the asserted claims of the '483 and '340 patents, as "a non-resonant surface with low sound absorption, not made of sound damping material." *See* Dkt. No. 206 at 3. SST included the phrase "non-resonant" in its proposed claim construction for "sound reflecting surface," *see* Dkt. No. 74 at 12, and requested its inclusion in the parties' agreed-upon construction at hearing. Dkt. No. 122 (Claim Construction Hearing Tr.) at 77:8–80:18. In its claim construction briefing, SST defined non-resonance as "avoid[ing] materials that would resonate at audible frequencies." Dkt. No. 74 at 13.

Apple contends that its products do not meet this limitation because: (1) the metal plate opposite the driver is not "non-resonant"; and (2) the metal plate does not terminate in a sound output aperture, as required by the claims.

SST admits that the metal plate has resonant properties, but contends that those properties are not "significant" or "consequential" enough to be considered resonant under the meaning of the claim construction. *See* SST Opp. Mot. at 3; Dkt. No. 431 at 7:1–6. SST additionally contends that the metal plate combined with the plastic surface opposite the driver together constitute the "sound reflecting surface," and that that surface terminates in a sound output aperture. *See* SST Opp. Mot. at 13.

After the hearing on the motion for summary judgment, in response to the Court's prompting, the parties submitted further briefing regarding the term "non-resonant." Dkt. No. 428. In that briefing, Apple proposes the construction "not resonating at audible frequencies." *Id.*

9

at 3. SST opposes Apple's construction and proposes the construction "without consequential resonance in the operative frequency band." *Id.* at 1. As this additional briefing arises with respect to a term that has already been construed by the Court, it is unclear if further claim construction is required[1]. Regardless, SST's attempt to pivot away from the definition of resonance it originally proposed during claim construction is unconvincing. The addition of the term "consequential," a nebulous qualifier that has not been used in any expert's analysis, would further confuse the issue. Apple's proposed construction comports with the term's usage in the record to date, and clarifies the understanding of the parties at the time of claim construction. Therefore, if further claim construction is required, the Court construes the term "non-resonant" to mean "does not resonate at audible frequencies." As a result, the complete construction of "sound reflecting surface" is "a surface that does not resonate at audible frequencies, with low sound absorption, not made of sound dampening material."

Under this further construction of the claim term, as well as under the originally agreed-upon construction, there is no dispute of material fact that the Apple accused products do not contain a "sound reflecting surface." SST admits—and Apple agrees—that the metal plate on the accused products resonates within audible frequencies with a measurable effect of multiple decibels. *See* Elliott Rpt. ¶¶ 563, 656–658; Dkt. No. 401 (Apple Reply) at 2. Apple's engineers have confirmed Dr. Elliott's observations regarding the resonance of the metal plate. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ SST cites *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1326 (Fed. Cir. 2015), contending that Apple engineers' own

---

[1] Where, as here, the parties have agreed to a claim construction, there is no right of one party to further narrow that construction by adding limitations. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1376 (Fed. Cir. 2015) (remarking that where "the parties *agreed* in the stipulation as to both the meaning and the scope of the term during claim construction … [that] meaning was agreed-upon *with no further limitations*," and that the "lack of further limitations was itself a characteristic of the construction to which both parties agreed"). As both SST and Apple have provided additional proposed constructions (with each adding limitations to the term in question) the Court will resolve the motion both under the original stipulated construction and with the term further construed.

testimony does not "negate evidence supporting infringement." SST Opp. Mot. at 9. Unlike the facts in *Ethicon*, where the testimony of the moving party witnesses was contradicted by other evidence in the record, the Apple engineers' testimony *corroborates* SST's admissions as to resonance of the metal plate. ▊

SST additionally contends that at least some of these statements reflect an inaccurate definition of the term "resonance" by conflating the term with simple vibration. SST Opp. Mot. at 1. However, the testimony in the record—including SST's counsel's consistent use of the term during questioning—makes it clear that the term "resonance" was used in accordance with SST's current definition: "a material's preferential response to a particular frequency." ▊ ; SST Opp. Mot. at 1. Viewing these statements in the light most favorable to SST still leaves uncontroverted the fact that the metal plate in the accused products resonates.

SST contends that the resonances to which Dr. Elliott refers do not render the metal plate a surface that resonates, because the resonances are not "significant" and are "relatively limited in size." *See* Elliott Rpt. ¶¶ 563, 399 (noting that all accused products performed similarly). These assertions are made without explanation as to what would constitute a "significant" resonance. *Id.* at ¶ 563. The Court rejects this argument with respect to resonance at audible frequencies or otherwise. SST's theory of non-infringement with respect to this limitation is premised on the same vague qualifiers it sought to add to the agreed-upon construction after the conclusion of fact

11

and expert discovery. After being presented with uncontradicted evidence of resonance in the accused products, SST has again retreated from its own construction by attempting to reinterpret the scope of the claim term. But Dr. Elliott's conclusion that the resonating metal plate "closely approximates" a non-resonant "sound reflecting surface" is insufficient to support SST's infringement theory. Elliott Rpt. ¶ 656. It is undisputed that the metal plate in the accused products resonates such that the audio output is affected. Therefore, the metal plate is not "non-resonant," as required by the Court's construction.

Because the Court finds that, on the record viewed most favorably to SST, no reasonable jury could find infringement of the "sound reflecting surface" term due to the accused devices failing to meet the "non-resonant" construction, the Court need not address the question of whether the accused sound reflecting surface terminates in an output aperture.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Apple's motion for summary judgment. The clerk shall vacate all further proceedings; enter judgment in favor of Apple; and close the file. The Court hereby **DENIES** the following motions as moot: Dkt. Nos. 308, 310, 315, 356, 358, 367, 369, 371, 434, 441, 443, 462, 463, 464, 466, 467, 469, 470, 471, and 472. The Court **GRANTS** SST's Motion for Leave to Supplement the Expert Report of Dr. Stephen Elliott, Dkt. No. 410.[2]

**IT IS SO ORDERED.**

Dated: MAR 2 7 2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[2] SST acknowledged at oral argument that this supplemental material has no bearing on the resolution of Apple's motion for summary judgment. Dkt. No. 452 at 4:20-5:1.